[Crim. No. 663.  Second Appellate District, Division Two.—July 29, 1919.]

# THE PEOPLE, Respondent, v. EDWARD J. BRAY, Appellant.

[1] CRIMINAL LAW — MOTION IN ARREST OF JUDGMENT — DENIAL — APPEAL.—An appeal does not lie from an order denying a motion in arrest of judgment.

[2] ID.—MURDER—PROOF OF MARRIAGE TO DECEASED—IRRELEVANT EVIDENCE.—In a prosecution for murder, it is not error to reject the defendant's offer in evidence of a certified copy of a marriage certificate and license, showing that the defendant and the deceased had gone through the form of a marriage ceremony, even though such evidence was offered to overcome the effect of the district attorney's repeated references to the deceased by her former marriage name, she not having been divorced from her former husband.

[3] ID.—CAUSE OF DEATH—STATEMENTS OF DECEASED.—In a prosecution for murder, evidence of declarations of the deceased, made about five days after the time when the prosecution claims that the defendant inflicted the lethal blows, that she had been delirious and had had fever, that she had fallen in the bathroom and had hurt herself severely, is not admissible for the purpose of laying a foundation for the testimony of experts that influenza was the real cause of the death.

[4] ID.—BODILY AND MENTAL FEELINGS—WHEN DECLARATIONS OF DECEASED ADMISSIBLE—FORM OF.—When bodily or mental feelings of

---

4. Declarations admissible as dying declarations, notes, 86 **Am. St. Rep.** 638; 56 **L. R. A.** 53.

a person are material issues in a case, the usual expressions of those feelings, involuntary declarations, and exclamations are admissible as tending in some degree to show present pain or suffering, or present physical condition. The expression of physical or mental condition—pain or sorrow—may take any form, inarticulate, as in groanings, articulate, as in exclamations, or more detailed statements, summarized as "complaints."

[5] ID.—STATEMENTS OF PAST AND PRESENT CONDITIONS—ADMISSIBILITY.—While declarations, exclamations or complaints are admissible as indicative of what the bodily or mental condition of the declarant is at the time of the declaration or complaint, such bodily or mental condition being an issue in the case, they are not admissible when they are but statements of the person's past condition or symptoms, or of the preceding cause of his present condition.

[6] ID.—RES GESTAE—WHAT CONSTITUTES—ADMISSIBILITY OF.—Testimony of complaints of present pain and suffering is admissible upon the principle of *res gestae*. Declarations, to become a part of the *res gestae*, must accompany the bodily pain or suffering, or the feeling or act which they are supposed to characterize and explain, and must so harmonize as clearly to be one transaction. To be competent as evidence, the declarations must be one transaction. Hence, declarations or complaints by one in his last illness that are but a narrative of the causes of the sickness or injury, or the manner in which or the time at which the injury was inflicted, or the nature of past symptoms, or the bodily condition at a prior time, are incompetent and inadmissible.

[7] ID. — FAILURE TO EXERCISE PROPER CARE OF SELF — STATEMENTS OF DECEASED AS PROOF.—In a prosecution for murder, evidence of statements of the deceased with reference to her bodily condition, made after the striking of blows by the defendant, are not admissible for the purpose of showing that the deceased "disregarded the conditions that would make for health or for sickness," and "gave no thought to what would occur."

[8] ID.—SUBPOENA DUCES TECUM—UNSUPPORTED APPLICATION—DENIAL. In a prosecution for murder, an application for an order directing the issuance of a *subpoena duces tecum* directed to the city health officer and requiring the production of the recorded certificate of death, showing the cause of death as certified to by a physician who was called in to examine the decedent shortly prior to her death, and who himself had died while the case was on trial, is properly denied where such application is not accompanied by an affidavit showing any of the contents of the death certificate and

6. What included within *res gestae,* notes, 95 Am. Dec. 51; 16 Am. St. Rep. 407.

the court is not apprised of its nature otherwise than by the unsupported statement of counsel as to his purpose in asking for the issuance of the subpoena.

[9] ID.—APPEAL—ERROR WARRANTING REVERSAL—RECORD.—Error warranting a reversal must affirmatively appear in the record, otherwise the appellate court cannot determine whether a substantial right of a defendant has been prejudiced by a ruling assigned as error.

[10] ID.—EXCLUSION OF DOCUMENTARY EVIDENCE—PERFECTING OF RECORD—STATEMENTS OF COUNSEL INSUFFICIENT.—Where documentary evidence is offered and refused, the contents of the writing, or so much thereof as is necessary to show that error has been committed, should be set forth in the record on appeal. Statements of counsel, made to the court at the time of offer, will not supply the lack of the document itself or of so much thereof as may be sufficient to enable the appellate court to determine whether the rejection of the offered writing was prejudicial to any substantial right of the appellant.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Frank R. Willis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles W. Lyon and Arthur Veitch for Appellant.

U. S. Webb, Attorney-General, and Joseph L. Lewinsohn, Deputy Attorney-General, for Respondent.

FINLAYSON, P. J.—Defendant was convicted of manslaughter. He appeals from the judgment of conviction and from an order denying his motion for a new trial. [1] He also has given notice of appeal from an order denying his motion in arrest of judgment, but as no appeal from an order of that character finds any warrant under our Penal Code, the attempted appeal therefrom must be disregarded. (Pen. Code, sec. 1237.)

The information charges that on or about October 27, 1918, in the county of Los Angeles, defendant wrongfully, unlawfully, and feloniously, and with malice aforethought, did kill and murder one Bertha May Wiswell.

The following summary of some of the facts will suffice for an understanding of the questions presented. For some time prior to October 19, 1918, defendant and the deceased

had been living together in an apartment house on Main Street, in the city of Los Angeles. The deceased was a married woman. She had been married to one Kent Wiswell, from whom she had not been divorced, and who was still alive at the time of her death, but from whom she had lived separate and apart for some years prior to the homicide. About 3 o'clock on the morning of October 19th, the deceased returned to the apartment where she and defendant were then living. Just prior to her return she had been in the company of a man of the name of Julius Hammer. She died on October 27, 1918. On the evening of October 19th, in front of the apartment house, defendant, in a conversation with a witness for the prosecution, on being asked if he was going to a dance that night, replied that he had "had his dance last night"; that "he and the old lady" had a battle about 3 o'clock in the morning. On the next day defendant told the same witness that "he had been to the drug-store to get some medicine for the old lady"; that "he guessed he had hurt her pretty bad"—that "I beat her up pretty bad." To another witness, who lived in the same apartment house, defendant, on October 20th, said: "She [the deceased] is not feeling very well; I knocked hell out of her," or "I beat hell out of her." He said that he did this on the morning of Saturday, the nineteenth day of October. After his arrest defendant told an officer that, as he was leaving the apartment house about 3 o'clock in the morning of October 19th, he met deceased in the lobby; that he suspected her of being out with Julius Hammer; that they had an argument; that he slapped her and struck her two or three times, and kicked her. The mother of deceased, who saw her on October 25th, testified that at that time deceased, who had been confined to her bed from the time when defendant struck her until her death, had a terrible black eye, and that the whole side of her face was mashed and bruised and in a terrible condition. On November 6th, the body meanwhile having been exhumed, a *postmortem* was held. Doctor Wagner, the county autopsy surgeon, who attended the *postmortem* and testified to many bruises on the body, enumerating and describing about thirty contusions or abrasions, said: "The contusions on the abdomen were rather extensive. There is interstitial hemorrhage and contusion of the abdomen and other tissues, with similar hemorrhage in the rectus muscles. . . . The

fibres were parted. . . . These contusions, taken altogether, with the interstitial hemorrhage or hematoma, were, in my opinion, the cause of death.'' The mother, in giving her testimony, said that on the occasion when she saw her daughter on October 25th, she complained all the time of terrible pain across her stomach and bowels.

We have deemed it necessary to state thus in detail some of these gruesome particulars, for the reason that defendant, who did not take the stand, advanced the theory that influenza was the cause of his victim's death, and upon this theory of the cause of death bases two of his claims of error in the rejection of certain proffered evidence. It is needless to say there was evidence for defendant directly contradicting the prosecution's contentions. The weight of that evidence, however, was for the jury.

[2] Defendant offered in evidence a certified copy of a marriage certificate and license, showing that defendant and deceased had gone through the form of a marriage ceremony at Santa Ana, in Orange County, on October 2, 1918; and he now assigns as error the ruling of the court sustaining an objection to this offer. Appellant concedes that ordinarily such evidence would be immaterial, but argues that it was admissible here in order to overcome the effect of the district attorney's repeated references to deceased as Bertha May Wiswell, thus creating in the minds of the jurors, so it is claimed, the idea that defendant was living with deceased in adulterous and illicit cohabitation, instead of as her lawful husband. But the district attorney was justified in referring to deceased as Mrs. Wiswell, or as Bertha May Wiswell, and not as Mrs. Bray. Bertha May Wiswell was her true name. She had been married to Kent Wiswell, who was still alive. In fact, he testified at the trial. She had not been divorced from him. The husband himself so testified. Moreover, one of defendant's witnesses, who was present at the marriage ceremony performed in Santa Ana, was permitted, without objection, to give oral evidence of that ceremony, testifying that defendant and Mrs. Wiswell were married at Santa Ana by a justice of the peace on October 2, 1918.

[3] Appellant complains of the exclusion of his offer to show that, on October 24th, or about five days after the time when the prosecution claims defendant inflicted the lethal blows, the deceased told a witness, over the telephone,

that she had been delirious and had had fever, and that she had fallen in the bathroom and had hurt herself severely. The offer to show that the deceased told this witness that "she had been delirious and had had fever" was for the purpose of laying a foundation for the testimony of experts that influenza was the real cause of death. Counsel for appellant say that "complaints and declarations of a decedent made during the course of the last illness are competent evidence upon the question of the cause of death." If by this counsel mean that declarations, during the last illness, as to the cause of the fatal injury or disease are admissible, they state the rule too broadly. [4] The rule is that when the bodily or mental feelings of a person are material issues in a case, the usual expressions of those feelings, involuntary declarations, and exclamations are admissible as tending in some degree to show present pain or suffering, or present physical condition. The expression of physical or mental feeling—pain or sorrow—may take any form, inarticulate, as in groanings, articulate, as in exclamations, or more detailed statements, summarized as "complaints." Such expressions are but the natural reflexes of what it might be impossible to show by other evidence. [5] But though declarations, exclamations, or complaints are admissible as indicative of what the bodily or mental condition of the declarant is *at the time of the declaration or complaint,* such bodily or mental condition being an issue in the case, they are not admissible when they are but statements of the person's past condition or symptoms, or of the preceding cause of his present condition. [6] Testimony of complaints of present pain and suffering is admissible upon the principle of *res gestae.* Declarations, to become a part of the *res gestae,* must accompany the bodily pain or suffering, or the feeling or act which they are supposed to characterize and explain, and must so harmonize as clearly to be one transaction. To be competent as evidence, the declarations must exclude the idea of a narrative of past occurrences. Hence, declarations or complaints by one in his last illness that are but a narrative of the causes of the sickness or injury, or the manner in which or the time at which the injury was inflicted, or the nature of past symptoms, or the bodily condition at a prior time, are incompetent and inadmissible. (*Kennedy* v. *Rochester*

*etc. R. Co.*, 130 N. Y. 654, [29 N. E. 141]; *Gulf etc. Ry. Co.*
v. *McKinnell* (Tex. Civ. App.), 173 S. W. 937; *Smith* v.
*Chicago etc. Ry. Co.*, 42 Okl. 577, [142 Pac. 398]; *Hamilton
etc. Co.* v. *Hoskins*, 244 Pa. 1, [90 Atl. 541]; *Kelley* v. *De-
troit etc. R. R. Co.*, 80 Mich. 237, [20 Am. St. Rep. 514, 45
N. W. 90]; *Green* v. *Pacific Lumber Co.*, 130 Cal. 435, [62
Pac. 747]; 16 Cyc. 1162; 1 R. C. L. 493; Wigmore on Evi-
dence, sec. 1722.) Tested by these principles, the proffered
evidence was inadmissible.

[7] Defendant's counsel asked one or two questions that,
possibly, were not objectionable under the rule applicable
to declarations of present bodily condition by one who is
injured or ill. But just before he asked these questions,
counsel stated to the court that his purpose was to show,
by the declarations of the deceased, that she "disregarded
the conditions that would make for health or for sickness,"
and "gave no thought to what would occur." In view of
this preliminary statement as to what counsel expected to
prove by decedent's declarations, the court was justified in
sustaining the objections. Counsel indicated that it was
not his purpose to use the declarations as probative cir-
cumstances showing the existence of a particular bodily
or mental condition at the very time when the declarations
were made.

[8] Finally, complaint is made of the court's refusal
to grant defendant's motion for an order directing the is-
suance of a *subpoena duces tecum*, directed to the city health
officer and requiring the production of the recorded certificate
of death, showing the cause of death as certified to by Dr.
Finch, a physician who was called in to examine the de-
cedent shortly prior to her death, and who himself departed
this life while the case was on trial. Defendant's counsel
told the court that his purpose was to show by the certificate
that Dr. Finch had certified that influenza was the cause
of death. The application for the order directing the issu-
ance of a *subpoena duces tecum* was not accompanied by any
affidavit. At any rate, the record before us fails to disclose
that the motion was accompanied by an affidavit showing
any of the contents of the death certificate, or that the court
was apprised of its nature otherwise than by the unsup-
ported statement of counsel as to his purpose in asking for
the issuance of the subpoena.

The health officer of the city of Los Angeles is the local registrar of vital statistics for that city. (Sec. 4, Vital Statistics Act, Stats. 1915, p. 576.) A certificate of death is required to be filed with the local registrar, showing the primary cause of death, and the contributory or secondary cause, if any, with the signature and address of the physician making the medical certificate. (Subd. 17 of sec. 7, Vital Statistics Act, Stats. 1915, p. 579.) Every local registrar is required to make a complete and accurate copy of each death certificate, to be preserved permanently in his office as the local record, and to transmit to the state registrar at Sacramento, on the fifth day of each month, all original certificates registered by him for the preceding month (sec. 19, Vital Statistics Act, Stats. 1915, p. 586). A certified copy of the record of any death, certified to by the state or local registrar, must be supplied to any applicant on payment of a fee of fifty cents, and shall be *"prima facie* evidence in all courts and places of the facts therein stated.'' (Sec. 21 of Vital Statistics Act, Stats. 1915, p. 586.)

Assuming, for the purpose of this decision, that if the death certificate did contain a statement that influenza was the cause of death it would be admissible as *prima facie* evidence of the facts stated therein, nevertheless, there is nothing in the record before us to indicate what the certificate showed the cause of death to be. The colloquy between the court and counsel, when the latter was asking for the issuance of a *subpoena duces tecum,* justifies the conclusion that counsel, in good faith, believed that the death certificate showed influenza to be the cause of death; and we likewise may justly infer from the remarks of the learned trial judge at that time that, even if the certificate did show influenza to have been the cause of death, he nevertheless would neither have admitted it in evidence nor have issued a subpoena for its production. But even so, we cannot reverse for this assigned error. For, *non constat* but that counsel was mistaken in his supposition that the certificate gave influenza as the cause of death. Though he doubtless in good faith believed that the certificate stated that decedent died of influenza, there is nothing in the record to show that there was any reasonable ground for such belief. A copy of the original certificate was on file in the office of the local registrar at Los Angeles, and upon the payment

of the trifling sum of fifty cents, a certified copy could have
been obtained and presented to the court with the application
for the subpoena; or counsel himself could have examined
the record in the local registrar's office, and, having done
so, could have presented with his motion for the subpoena
an affidavit setting forth what the certificate showed the
cause of death to be. Had he pursued either of these
courses, the record here, if it were a full and correct tran-
script of the proceedings in the court below, would have
enabled us to see whether the death certificate showed the
cause of death to be other than as contended for by the
prosecution. In the absence of something in the record be-
fore us disclosing what the death certificate did show as
to the cause of death, we cannot say that the court erred in
refusing to order the issuance of a subpoena for its pro-
duction. [9] Error warranting a reversal must affirma-
tively appear in the record, otherwise this court cannot de-
termine whether a substantial right of a defendant has been
prejudiced by a ruling assigned as error. (*People* v. *Harris*,
169 Cal. 64, [145 Pac. 520].) [10] The case falls within
the principle of those authorities which hold that where
documentary evidence is offered and refused, the contents
of the writing, or so much thereof as is necessary to show
that error has been committed, should be set forth in the
record on appeal, in order that the court may determine
whether the rejection of the offered writing was prejudicial
to any substantial right of the appellant. (*San Francisco
etc. Agency* v. *Hogan Co.*, 6 Cal. App. 408, [92 Pac. 312];
*In re Angle*, 148 Cal. 691, [82 Pac. 668].) Nor will the state-
ment of counsel, made to the court at the time of the offer,
supply the lack of the document itself or of so much thereof
as may be sufficient to enable the appellate court to deter-
mine whether its rejection was prejudicial. (*Bensch* v.
*Farnsworth*, 9 Ind. App. 547, [34 N. E. 751, 37 N. E. 284].)
Though appellant could have procured from the local reg-.
istrar a certified copy of the record in his office, upon pay-
ing the fee of fifty cents, he argues that "where the issues
are as serious as they were in this murder case, the defend-
ant would only be fully equipped against all quibble by the
production of the original document before the jury, sup-
plemented by proof of the handwriting of the physician whose
name was signed to the document." This argument proceeds
upon the false assumption that the original certificate, signed

by Dr. Finch, was on file in the office of the local registrar at Los Angeles. The trial did not take place until some months after the homicide; and, presumably, the original, signed by Dr. Finch, was, at that time, on file in the office of the state registrar at Sacramento, where the local registrar, after making a copy for his office, was required by section 19 of the act to send it.

The judgment and the order denying a new trial are affirmed.

Sloane, J., and Thomas, J., concurred.