[Crim. No. 5205.   Second Dist., Div. Three.   Nov. 4, 1954.]

THE PEOPLE, Respondent, ·v. JOHN B. KEENE, Appellant.

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

VALLÉE, J.—Defendant was charged in Count I of an information with having conspired with Rumley, Batten, and Smith to cheat and defraud Kork Incorporated, California Bank, Phillips Furring Nail Company, Security-First National Bank, and others by forging and passing checks as genuine, knowing them to be forged. Thirteen overt acts were alleged to have been performed in pursuance of the conspiracy. He was charged in Counts II to XIII with having forged and passed certain checks, knowing they were forged, with intent to cheat and defraud various persons and companies. He was found guilty by a jury of each count charged and was sentenced to state prison on each count. The judgment was that the sentence on Counts II to VI should run concurrently with each other and consecutively to the sentence on Count I, and that the sentences on Counts VII to XIII should run concurrently with each other and consecutively to the sentences on Counts II to VI. Defendant appeals from the judgment. Batten, one of the alleged conspirators and an admitted accomplice, testified for the prosecution and implicated defendant in all of the offenses charged.

Defendant's points are: 1. Insufficiency of the evidence to support the verdicts in that there was not sufficient corroboration of the testimony of the accomplice Batten. 2. Error in the admission and exclusion of evidence. 3. Error in the giving and refusal of instructions. 4. Error in pronouncing consecutive sentences.

## The Testimony of Batten the Accomplice

Batten first met defendant in Oakland in 1946 or 1947. He met him again in late 1951 or early 1952 in Oakland. Batten needed money and asked defendant for work. Defendant introduced Batten to Rumley and the three had a conversation about passing checks. Defendant told Batten he was making the checks and instructed him how to operate. Batten was given a driver's license and a social security card with a name on them other than his. Different cards with varying names were given him at different times. Defendant or Rumley would scout a town and pick out the places that were to be "hit." Rumley picked out the company names that were to be used on the checks and telephoned

them to defendant. Either defendant or Rumley would give Batten a check; Batten would go into a saloon or a store, show his driver's license or social security card or both and cash the check, receiving cash or cash and merchandise. Batten cashed numerous checks at saloons, markets, and other places of business in South San Francisco, Sonoma or Napa, Fresno, Whittier, Long Beach, and Bakersfield.

In May 1952 defendant, Rumley, and Batten decided to start passing checks in the Los Angeles area. About that time Batten saw defendant setting up type and cutting paper on which the checks were to be printed, and defendant explained the setting of type to Batten. Rumley gave Batten a suitcase to take to Los Angeles; defendant and Rumley drove, Batten flew on May 21, 1952. Defendant met Batten at the airport and took the suitcase. After going to a hotel Batten signed fictitious names on paper furnished by defendant who said he wanted them so he could make a photostatic driver's license. Within the next two weeks Batten cashed numerous checks in Whittier and Long Beach, accompanied each time either by defendant or Rumley who remained outside while he went into the place of business. In Whittier Batten cashed the Kork Incorporated checks, endorsing the name "Rex Lee Thomas" on each. In Long Beach he cashed the Phillips Furring Nail Company checks, endorsing the name "Charles A. Davis" on each. In July 1952 Batten, working with defendant, passed a number of checks in Bakersfield. Other checks were cashed by Smith working with Rumley. The proceeds received from the checks cashed by Batten and Smith were divided four ways with deductions from the shares of Batten and Smith to help pay defendant and Rumley for their press and photostat machine.

### The Checks

The Kork Incorporated checks were written "WHITTIER, CALIF., May 23, 1952," were drawn on "CALIFORNIA BANK WHITTIER OFFICE," were payable to "Rex Lee Thomas," and were signed "KORK INCORPORATED George A. Knapp PAYROLL ACCOUNT." The date, the check number, certain figures on them, the name "Rex Lee Thomas," and an amount such as "$84.90" were written with a typewriter. The name "George A. Knapp" was handwritten. The words and figures such as "the sum of $84 and 90 cts" were impressed with a check protector. All other matter on the face of the checks was printed. They were endorsed "Rex Lee

Thomas.'' The checks were dishonored. No person named ''Rex Lee Thomas'' was employed by Kork Incorporated, and it did not have an account in or credit with California Bank. An expert testified that the endorsements were written by Batten.

The Phillips Furring Nail Company checks were similar to those of Kork Incorporated. They were written ''San Pedro, Calif., June 6, 1952,'' were drawn on ''SECURITY-FIRST-NATIONAL BANK-OF-LOS ANGELES SAN PEDRO BRANCH,'' were payable to ''Charles A. Davis,'' and were signed ''PHILLIPS FURRING NAIL Co. A. E. Phillips PAYROLL ACCOUNT.'' They were endorsed ''Charles A. Davis.'' They were all dishonored. No person named ''A. E. Phillips'' was employed by Furring, and it had no account in or credit with Security-First National Bank. An expert testified that the endorsements were written by Batten.

On May 21, 1952, defendant, accompanied by Rumley, rented garage No. 6 at 1405 South Burlington Avenue, Los Angeles, from Mrs. Cazel, the manager of the apartment house at that address. Defendant paid the rent and received from Mrs. Cazel one of the two keys to the garage. Defendant and Rumley carried a dismantled printing press from a house trailer which was attached to the automobile they were in, into the garage. They then assembled the press. Defendant visited the garage from time to time, usually carrying a briefcase in his hand. The last time Mrs. Cazel saw defendant there was on February 18, 1953, when he paid the rent in advance and carried two suitcases from the garage. The printing press remained in the garage until the police went there.

On March 27, 1953, two police officers went to the garage. They found the printing press, boxes of lead type, cans of printer's ink of various colors, hard rubber rollers with iron axles through their centers, and a large iron plate. Some loose type, consisting of capital and smaller letters, was wrapped in heavy cloth lying on a shelf. The police made exemplars of the Kork Incorporated checks with this type. The Kork Incorporated checks, the exemplars, and the type had the same breaks, indentations, and defects. An expert testified that the lines on the type were used to print the corresponding lines on the checks. The police made exemplars of the Phillips Furring Nail Company checks using all of the type found in the garage. The Furring checks, the exemplars, and the type had the same defects. An expert

testified that the letters "P," "N," and "C," and the period in the type were used to print the same letters and the period in "Phillips Furring Nail Co." on the checks.

The rules governing the kinds and the quantum of evidence essential to constitute corroboration of an accomplice have been stated many times. (*People* v. *Wayne,* 41 Cal.2d 814, 822 [264 P.2d 547]; *People* v. *Barclay,* 40 Cal.2d 146, 156 [252 P.2d 321]; *People* v. *Jordan,* 115 Cal.App.2d 452, 456-459 [252 P.2d 328]; *People* v. *McNamara,* 103 Cal.App. 2d 729, 739 [230 P.2d 411]; *People* v. *Malone,* 82 Cal.App.2d 54, 61 [185 P.2d 870].) Repetition would serve no purpose. ■ Section 1111 of the Penal Code requires only that the corroborative evidence tend "to connect a defendant with the commission of the crime in such a way as reasonably may satisfy a jury that the accomplice is telling the truth. It is not necessary that the accomplice be corroborated as to every fact to which he testifies." (*People* v. *Trujillo,* 32 Cal.2d 105, 111 [194 P.2d 681].) ■ Possession of the probable instrument of a crime may be sufficient corroboration to warrant a conviction of the testimony of an accomplice. (*People* v. *McNamara,* 103 Cal.App.2d 729, 739 [230 P.2d 411].) ■ The evidence with respect to defendant's renting the garage on May 21, 1952, his carrying a dismantled printing press into it, his assembling and using it, his visiting the garage from time to time, his carrying briefcases and suitcases in and out, the cashing of the checks of May 23 and June 6, 1952, and the fact that type found in the garage was used to print parts of the checks cashed as Kork Incorporated's and Phillips Furring Nail Company's constituted sufficient corroborative evidence to connect defendant with the commission of the offenses charged. Defendant did not testify. ■ His failure to do so added weight to the corroborating evidence. (*People* v. *Ashley,* 42 Cal.2d 246, 268-269 [267 P.2d 271].)

Defendant contends the court erred in admitting the uncorroborated testimony of Batten that he had passed checks given to him by either defendant or Rumley, in South San Francisco, Sonoma or Napa, and Fresno before the offenses charged were alleged to have been committed. There was no error. No authority is cited in support of the proposition that the uncorroborated testimony of an accomplice is not admissible to prove other offenses in order to show a common plan, scheme or design. ■ Evidence which merely tends to show the commission of other offenses is admissible to

prove a common plan, scheme, or design even though it falls short of proving the corpus delicti of such other offenses. (*People* v. *Lisenba,* 14 Cal.2d 403, 431 [94 P.2d 569] ; *People* v. *Thorne,* 10 Cal.2d 705, 708 [76 P.2d 491] ; *People* v. *Consigli,* 105 Cal.App.2d 104, 106 [232 P.2d 526].)

Complaint is made of the admission in evidence of the type found in the garage and the exemplars printed from it. It is argued that in order to print the exemplars the police had to assemble the press and use slugs (pieces of lead for spacing type), furniture (pieces of wood for holding type in place), a quoin key, and other items from their own shop to hold the type in place, and that these facts show that the printing of the checks could not have been done in the garage. The point has no merit. The type used by the police was that found in the garage. Whether the conclusion defendant asserts should have been drawn was for the jury.

Defendant claims the court erred in granting a motion to quash a subpoena duces tecum for the production of the printing press at the trial. The record only shows that such a motion was granted. There is nothing to show error. In the absence of an affirmative showing of error we must presume the ruling was correct. (*People* v. *Bray,* 42 Cal.App. 465, 473 [183 P. 712].)

It is claimed the court erred in permitting the expert to testify that in his opinion some of the type found in the garage was used to print some of the printing on the checks. The argument is that the matter is not a proper subject of expert testimony and that such testimony invaded the province of the jury. Defendant stipulated that the expert was qualified. The matter obviously was a proper subject of expert testimony, and it did not invade the province of the jury. (*People* v. *Cline,* 138 Cal.App. 184, 194-195 [31 P.2d 1095] ; *People* v. *McKenna,* 116 Cal.App.2d 207, 209-210 [255 P.2d 452].)

Defendant contends the court erred in not instructing the jury that he was charged in counts II to XIII with two different offenses, i. e., "making, altering, forging and counterfeiting" and "uttering, publishing, and passing" the checks, and it was necessary there be corroboration of the testimony of Batten with respect to both, and corroboration of one would not be corroboration of the other. The contention is predicated on the erroneous assumption that each count—II to XIII—charged two different offenses. The allegation in each count that defendant did "make, alter,

forge and counterfeit" a certain check, and did "utter, publish and pass the same," is an allegation of a single offense. (*People* v. *Leyshon,* 108 Cal. 440, 442-443 [41 P. 480] ; *People* v. *Pauli,* 58 Cal.App. 594, 597 [209 P. 88].)

▮▮▮ The court refused to give the following instruction requested by defendant: "When the case which has been made out by the People against a defendant rests entirely or chiefly on circumstantial evidence, and in any case before the jury may find a defendant guilty basing its finding solely on such evidence, each fact which is essential to complete a chain of circumstances that will establish the defendant's guilt must be proved beyond a reasonable doubt."[1] Defendant claims error. The instruction correctly states the law.

▮▮▮ Where the case rests on circumstantial evidence each fact which is essential to complete a chain of circumstances establishing guilt must be proved beyond a reasonable doubt. An essential fact is one without proof of which guilt would not be established. If there is a reasonable doubt as to the existence of an essential fact the proof is insufficient. Referring to this instruction, the court in *People* v. *Webster,* 79 Cal.App.2d 321, said (p. 327 [179 P.2d 633]): "It is now established in California that in cases like the one before us where the case of the People rests entirely on circumstantial evidence instructions such as those quoted should have been given. (*People* v. *Hatchett,* 63 Cal.App.2d 144 [146 P.2d 469] ; *People* v. *Rayol,* 65 Cal.App.2d 462 [150 P.2d 812] ; *People* v. *Bender,* 27 Cal.2d 164 [163 P.2d 8] ; *People* v. *Koenig,* 29 Cal.2d 87 [173 P.2d 1].) In the Koenig case it was said: 'The failure either to give the requested instruction or to include in the instruction given a proper statement of the principle that the evidence must be inconsistent with any other rational hypothesis was error. It does not follow, however, that error in this regard necessarily requires reversal of the trial court. In the Bender case, it was held that the failure to give a complete instruction was not prejudicial under the facts in that case.' " ▮▮▮ The jury were properly instructed on reasonable doubt, and direct and circumstantial evidence were properly defined. Further, the evidence was not either entirely or chiefly circumstantial. We are satisfied from the entire record that failure to give the instruction was not prejudicial error.

The court gave the following instruction to the jury: "In

---

[1]This is California Jury Instructions Criminal No. 28.

determining whether or not the testimony of an accomplice has been corroborated as required by law, you must, for the purpose only of your consideration of that question, assume to be removed from the case *that portion of the testimony of the accomplice which tends to connect the defendant with the commission of the offense* and then examine all other evidence with a view to determining if there be any inculpatory evidence, that is, evidence tending to connect the defendant with the commission of the offense. If such other evidence does do that, then the testimony of the accomplice is corroborated; if it does not, then there is no corroboration, although the accomplice may be corroborated in regard to any number of facts sworn to by him.'' (Italics added.) Defendant says the italicized part of the instruction erroneously allowed the jury to consider Batten's testimony concerning other offenses than those charged ''to convict the defendant through an atmosphere unwarranted by anything other than Batten's story,'' and the jury should have been told to eliminate all of Batten's testimony before determining whether there was other evidence tending to connect defendant with the offenses. The instruction is a correct statement of the law. ■■■ It is only the testimony of an accomplice which tends to connect the defendant with the commission of the offense that must be corroborated by evidence which independently tends to connect the defendant with the offense. (*People* v. *Barclay*, 40 Cal.2d 146, 156 [252 P.2d 321].)

Batten had previously been convicted of a felony. The court gave the following instruction: ''The fact that a witness had been convicted of a felony, if such be a fact, may be considered by you [for only one purpose, namely,] in judging the credibility of that witness. The fact of such a conviction does not necessarily destroy or impair the witness's credibility, and it does not raise a presumption that the witness has testified falsely. It is simply one of the circumstances that you are to take into consideration in weighing the testimony of such a witness.'' Defendant says that Batten had not only been convicted of a felony but he had been given a very light sentence and the jury had a right to consider the light sentence to impair his credibility, and that this instruction took that right from them. ■■■ No reference to the record is given in support of the statement that Batten was ''given a very light sentence,'' and we have neither the time nor the inclination to search the voluminous record to determine whether the point has any merit.

Defendant contends that the overt acts alleged to have been committed in pursuance of the conspiracy in count I consist of the acts alleged as substantive offenses in counts II to XIII, and therefore imposition of the consecutive sentences inflicted double punishment for the same offense. Double punishment was not inflicted.. ▮▮▮. Conspiracy is a distinct offense from the actual commission of the offense or offenses forming the object of the conspiracy; and the fact that the conspirators succeeded in perpetrating the acts which of themselves constitute the offense or offenses which they conspired to commit, in nowise relieves them from liability for conspiracy under section 182 of the Penal Code. The guilty parties may be legally convicted of both offenses. (*People* v. *Martin*, 114 Cal.App. 392, 396 [300 P. 130]; *People* v. *Hoyt*, 20 Cal.2d 306, 316-317 [125 P.2d 29].) ▮▮▮ The imposition of sentences to run concurrently or consecutively—or both, as in this case—is within the discretion of the trial judge.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 3, 1954.