[Crim. No. 6161.   Second Dist., Div. Three.   Jan. 30, 1959.]

THE PEOPLE, Respondent, v. ROBERT WILLIAM
HOLSTUN, Appellant.

Albert C. S. Ramsey for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—In an information defendant Holstun and one Thomas Burke were charged, in count 1, with conspiracy to commit grand theft; in count 2 with grand theft; and in count 3 with conspiracy to violate certain sections of the Alcoholic Beverage Control Act. Burke pleaded guilty as to count 1, and further proceedings as to him were continued to a later date. Holstun pleaded not guilty as to the three counts. In a jury trial Holstun was found guilty on count 3, and not guilty on count 2. The jury could not agree upon a verdict as to count 1; and a mistrial was declared as to that count. (Later count 1 was dismissed.) Holstun was sentenced, on count 3, to imprisonment in the county jail for one year. He appeals from the judgment and the order denying his motion for a new trial.

In count 3 it was alleged that Holstun and Burke committed the crime of conspiracy to violate the regulatory provisions of the Alcoholic Beverage Control Act in that about July, 1957, they unlawfully conspired together to violate the provisions of sections 25657, 25658, and 25663 of said act.

As overt act 1, it was alleged therein that said defendants "employed female persons commonly known and described as 'B' girls to solicit the purchase of drinks of intoxicating beverages for said female persons and for male customers on premises operated by said defendants."

As overt act 2, it was alleged that the defendants "served and caused to be served drinks of intoxicating beverages to minor persons in on-sale premises."

As overt act 3, it was alleged that the defendants "employed two minor girls, . . . [Judy and Connie], to act as so-called 'B' girls, that is, to solicit male customers of on-sale liquor premises to purchase drinks of intoxicating beverages for said minor girls and male customers."

As overt act 4, it was alleged that the said minor girls (Judy and Connie) "did solicit the purchase of drinks of intoxicating beverages under the direct instructions of the said defendants" at the Gyro Room and the Captain's Table.

Appellant asserts that certain code sections, involved herein, are unconstitutional; the court erred in instructing the jury; and the evidence was insufficient to support the verdict.

At various times, beginning in 1953, the defendant Holstun (appellant) owned and operated six bars or saloons in Long Beach. At the time of the alleged offenses involved herein, he was operating four of the bars. Two of the bars he was then

operating were adjacent bars which were known as the Gyro Room and the Captain's Table. Defendant Thomas Burke was the manager of those two bars.

On April 25, 1957, about 11 p.m., a sailor entered the Gyro Room, and at that time he had more than $500 on his person. Rusty, a girl employee in that bar, introduced him to Judy, another girl employee therein. Then he and Judy sat at a table and he bought drinks for her and himself. Soon thereafter, another girl employee therein, by the name of Connie, sat at the table with them. Judy and Connie "wanted" champagne, and he bought it for them. Rusty waited on them. He bought at least three or four bottles of champagne. When a bottle was brought to the table he paid for it with a $20 bill. He was intoxicated and did not notice whether each bottle was a new bottle or the same bottle that had been on the table. He also drank some beer and a drink known as a screwdriver, consisting of vodka and orange juice. He was affectionate with the girls. There was a discussion about the three of them going to an apartment. They remained at the table until approximately 2:30 a.m., when he, Judy, and Connie left the barroom. They entered a taxicab and traveled several blocks. Then they walked down a stairway to the beach. During the walk the girls had their arms around his waist and he had his arms around their necks. When they arrived at the beach Connie "disappeared." While he and Judy continued along the beach, he put his hand in his pocket and found that all his money, except $11, was gone. Thereupon they returned to the boulevard. A taxicab, in which Connie was riding, came there and stopped for a second. Judy jumped into the cab, and the cab went away. He telephoned the police. Soon thereafter the police arrested Judy and Connie.

Judy was 19 years of age. Two or three days before April 25, she was employed by Burke to work at the Gyro Room. Burke introduced her to appellant (Holstun) and said that appellant was the owner of the place. Neither Burke nor appellant asked her how old she was. With respect to her duties, Judy testified that she was supposed to be a cocktail waitress; Burke told her to "hustle up" the drinks and keep the drinks coming in, to sit down and drink with the customers, and try to get them to buy as much champagne as possible; about 11 p.m. on April 25, she sat at a table in the Gyro Room with a sailor (McWilliams) ; she observed that he had a large amount of money consisting principally of $20 bills; part of the money was counted in her presence, and that

part was $500; soon thereafter Connie sat at the table with them, and at that time a bottle of champagne was on the table; Rusty (a waitress) poured champagne from the bottle into glasses, and then she took the bottle away; the sailor complained about the high price charged for a bottle of champagne; he ordered another bottle of champagne; during the time they were sitting there, Rusty brought a bottle of champagne to the table four or five times; when Connie began pouring drinks on the side of the chair, Burke motioned to Judy indicating that she also should ''pour out'' her drinks; thereafter Judy and Connie ''poured out'' their drinks; while they were there the sailor kissed them and they kissed him; before Connie arrived at the table, appellant had told Judy that any money she got from the sailor would be split three ways—divided among Burke, appellant, and Judy; after Connie was at the table appellant told Judy that money obtained from the sailor would be split four ways; appellant and Burke told Judy to keep the sailor there as long as she could keep him; Burke told her to keep the sailor there after the closing hour; after the place was closed about 2 a.m., and while the sailor was still there, appellant told Judy to take the sailor out and try to get the rest of the money from him, and to promise him anything he wanted; Burke told her to promise him anything; Judy, Connie and the sailor left the place, entered a taxicab, and traveled several blocks; then the three of them started to walk down a stairway to the beach; during the walk, the sailor had his arms around the girls; when Connie showed money to Judy, the girls ran away from the sailor; the sailor ''caught up'' with Judy, but Connie entered a taxicab and went away; after Judy and the sailor had returned to the top of the stairway, Connie came there in a taxicab, and Judy entered the cab and they went to their apartment; soon thereafter police officers came to the apartment, recovered the money, and took the girls to the police station.

Connie was 20 years of age. On April 25, about 11:30 p.m., she entered the Gyro Room and sat at the bar and drank beer. She told appellant that she was Judy's roommate. She testified that appellant asked her if she would like to work for him; she asked him what she would have to do; he said that all she would have to do would be to sit with the customers and drink, and promise them anything; he told her he would guarantee $50 a week, that some girls made from $15 to $25 a night in tips or what they can ''take the fellow for''; soon

thereafter, appellant told her that the sailor (McWilliams) had $1,300, and if she would work with Judy, he (appellant) would see that she and Judy would go home together; he also told her to order all the champagne she could order, and to try to get the sailor to buy a lot of drinks; he said that anything they took in or any money they took from the sailor would be split four ways; appellant did not ask how old she was; she sat at the table with Judy and the sailor; Rusty brought a bottle of champagne to the table; after the bottle was partially empty, Rusty took it back to the bar; Rusty brought champagne to the table seven or eight times; Connie and Judy were affectionate with the sailor; appellant told Connie to try to keep the sailor there after hours and ''we will try to get the money then.'' The testimony of Connie, with respect to occurrences after leaving the bar, was substantially the same as the testimony of Judy with respect thereto.

Rusty testified that, when she was 19 years of age, she was employed by Burke to wait on the tables at the Gyro Room and to drink with the customers if so requested by them; on April 25, while she was in that bar but was not working there at that time, appellant asked her if she would like to make some money by serving the table where Judy, Connie, and a sailor were sitting; appellant told her that the sailor had a considerable amount of money and they would like to have it; she waited on the table and took champagne to the table about three times; Burke told her when to take the first bottle away from the table.

Five other girls, who had been employees of appellant, testified in substance the same as Judy, Connie, and Rusty had testified with respect to the general instructions given by appellant and Burke regarding duties. The five other girls testified that appellant and Burke had instructed them to associate and drink with the men customers and induce them to spend money. They also testified that they followed those instructions.

Mr. McGrail testified that in April, 1957, when he was paying for a highball which he had ordered in the Gyro Room, he handed a $100 bill to the bartender; there was a delay in giving the change; meanwhile, two girls came to his table and drank from ''bottles that were labeled champagne''; he asked them who was paying for their drinks; they told him not to worry; about an hour later, Burke came to the table and gave him $60 as change.

Defendant Burke, called as a witness by the People, testified that on April 25, 1957, he was manager of the Gyro Room and the Captain's Table; soon after he commenced working for appellant in 1955, appellant told him to have the girls push the sale of champagne and to get a good price for it; appellant also told him that the girls should associate and drink with the customers and induce them to spend money, and if the girls had any outside activities, that was approved; pursuant to appellant's instructions, Burke told all the girls that in the matter of getting money from men customers they should promise the men anything; he told Judy to come to work at the Gyro Room; he did not know she was 19 years of age; he did not ask how old she was; he gave her instructions with respect to her duties; on April 25, about 11 p.m., while the sailor was sitting at a table with Judy and Connie, appellant told Burke that one of the girls said that the sailor had a considerable amount of money; appellant instructed Connie in the bar business and discussed with her the method of "a split" and "the inducement of separating a person from his money"; Burke told Judy and Connie to sell as much champagne as possible to the sailor and to keep him spending money; Burke told Rusty to take the bottle of champagne to the table and to take it back; on one occasion, appellant told Burke that a girl named Valerie, who had been employed there, was a good person to contact men, bring them into the bar, and induce them to spend money; on another occasion, appellant told Burke that he paid money to Valerie for selling champagne at a high price; appellant also told him to tell the other girls that they would receive $5.00 on a bottle of champagne if they sold it for a price from $15 to $25; Burke heard appellant tell a bartender (at another bar owned by appellant) to keep the girls hustling to see that the house got its "end," and that there were "no stops."

The testimony of appellant on direct examination was in effect a denial of the statements and acts attributed to him, in the testimony of the prosecution witnesses, with respect to the duties of the girls or the instructions to them as employees. On cross-examination, he testified that Judy told him that the sailor had a considerable amount of money; he (witness) told her to talk to Burke; his purpose in telling her to talk to Burke was that she should tell Burke that a man was there to spend money; he would not have told Judy to "get all you can," but he might have given her a word of praise, and it was probable that he gave her "a little urge"; he was in-

terested in Judy getting all the money she could get for the house; he saw Judy, Connie, and the sailor sitting and drinking at the table.

Mary Ambrosio, called by the People as a rebuttal witness, testified that she was a police officer; pursuant to an assignment she went to the Gyro Room on April 30, 1957, and told appellant she wanted to work for him; appellant said he would like to employ her; he told her she would receive $10 a day if she stayed there; she said she received more than that where she had worked, and she had received "so much" on every drink she sponsored; he said he could not do anything like that but he would split "50-50" with her on champagne, and that a smart girl could make $90 a week there and that "plenty of them do."

■ Appellant asserts that section 182 of the Penal Code, under which he is charged with conspiracy in count 3, is unconstitutional. That section provides that if two or more persons conspire to commit any crime, they are punishable as follows: when they conspire to commit any felony, they shall be punishable in the same manner as is provided for the punishment of said felony; when they conspire to do any other acts described in said section, they shall be punishable by imprisonment in the county jail for not more than one year, or in the state prison for not more than three years, or by a fine or both fine and imprisonment. Appellant argues to the effect that he and Burke could have been charged with violating sections 25657, 25658, and 25663 of the Business and Professions Code, referred to in the information, or with an attempt to violate those sections, and then, if they were convicted, they would have been subject only to misdemeanor punishment, whereas they were charged with conspiring to violate those same sections and, having been convicted, they became subject to felony punishment; and that such discrepancy between the punishments deprives him of his constitutional right of equal protection of the laws. He argues further that such a discrepancy is unfair in that the punishment for agreeing to commit a misdemeanor is far greater than the punishment would be if the misdemeanor were actually committed. ■ In *People* v. *Keene*, 128 Cal.App.2d 520, it was said at page 529 [275 P.2d 804]: "Conspiracy is a distinct offense from the actual commission of the offense or offenses forming the object of the conspiracy; and the fact that the conspirators succeeded in perpetrating the acts which of themselves constitute the offense or offenses which they conspired to

commit, in nowise relieves them from liability for conspiracy under section 182 of the Penal Code." In *Clune* v. *United States*, 159 U.S. 590 [16 S.Ct. 125, 40 L.Ed. 269], it was said at page 126 [16 S.Ct.] : "A conspiracy to commit an offense is denounced as itself a separate offense, and the punishment therefor fixed by the statute, and we know of no lack of power in Congress to thus deal with a conspiracy. Whatever may be thought of the wisdom or propriety of a statute making a conspiracy to do an act punishable more severely than the doing of the act itself, it is a matter to be considered solely by the legislative body." ■■■ Appellant's contention regarding unconstitutionality of said section 182 is not sustainable.

■■ Appellant asserts further that section 25657 of the Business and Professions Code (referred to in the information as having been violated by appellant) is unconstitutional in that it is so vague and uncertain that it violates the due process clause of the Constitution. That section provides, in part, that it is unlawful "For any person to employ, upon any licensed on-sale premises, any hostess or entertainer for the purpose of procuring or encouraging the purchase or sale of alcoholic beverages, or to pay such hostess or entertainer a percentage or commission on the sale of alcoholic beverages for procuring or encouraging the purchase or sale of alcoholic beverages on such premises." Appellant argues that the section is vague and uncertain in that it fails to define the word "hostess" which is used therein; and that the meaning of that word is left open to speculation and conjecture. He quotes from the testimony of Judy, Connie, Rusty and others wherein the girls are referred to as waitresses, and argues that the girls employed by appellant were not hostesses. In *Cooper* v. *State Board of Equalization*, 137 Cal. App.2d 672 [290 P.2d 914], a license to sell intoxicating liquor had been revoked on the basis that the licensee had violated said section 25657 and other statutes. In that case there was evidence that waitresses solicited male customers to purchase drinks for them and that the waitresses received money from the bartender for soliciting the purchases. It was contended therein that said section and another section (Pen. Code, § 303) were void for uncertainty. (The word "hostess" was not discussed specifically therein.) The court said at page 680: "Appellants argue that the language of the statutes 'to employ . . . any person for the purpose of pro-

curing or encouraging the purchase or sale of such beverage' is so broad as to apply to legitimate entertainers, who by providing entertainment necessarily encourage the sale of drinks, or to a waitress who asks a patron if he desires a drink. The contention requires but scant consideration. The Legislature obviously intended to prohibit the direct 'procuring or encouraging the purchase' of alcoholic beverages, and not the incidental increase of consumption of liquor by persons watching entertainment furnished by the management. We have no difficulty in holding that the statute clearly and without ambiguity only prohibits direct solicitation of drinks, and does not prohibit the purchase of drinks by patrons of their own initiative and volition while watching entertainment or when asked by a waitress if they desire service.'' ▆ In *People* v. *Hallner*, 43 Cal.2d 715, it was said at page 720 [277 P.2d 393]: ''A statute will not be declared void as being indefinite if it contains 'a reasonably adequate disclosure of the legislative intent regarding an evil to be combatted in language giving fair notice of the practices to be avoided.' '' ▆ The word ''hostess'' is defined as: ''A female host; in public resorts, an attendant in charge who dispenses hospitality.'' (Webster's New Internat. Dict., second ed., unabridged, p. 1205.) A ''host'' is defined as: ''One who receives or entertains another, whether socially or for pay . . . .'' (*Ibid.*) The word ''hostess'' is one of common usage and understanding. It is apparent that it was the legislative intent to prohibit the direct ''procuring or encouraging of the purchase'' of alcoholic beverages, by a female attendant employed at on-sale premises, if her duties as such attendant include dispensing hospitality by such methods as receiving, entertaining, or drinking with, male customers. Appellant's contention regarding unconstitutionality of said section 25657 is not sustainable.

▆ Appellant also asserts that the court erred in not instructing the jury as to the meaning of the words ''hostess'' and ''B girls,'' as used in the information. He did not request such an instruction. He argues that the court of its own motion should have given such an instruction so that the jury would have known the meaning of the charge in count 3. The court gave an instruction which stated the substance of said section 25657 of the Business and Professions Code. It also gave an instruction to the effect that, as a prerequisite for determination of guilt, the jury must find that an overt act was committed, as alleged in the information. The information

was read twice to the jury. As above shown, overt act 3, in count 3, alleged that defendants employed the two minor girls, Judy and Connie, "to act as so-called 'B' girls, that is, to solicit male customers of on-sale liquor premises to purchase drinks of intoxicating beverages for said minor girls and male customers." Rachel Brann, a witness called by the People, who was employed about three years as a waitress at bars owned by appellant, testified that a "B girl," as she understood the term, was one "Just to sit and drink and try to make extra money." As above stated, in discussing the next preceding contention, the word "hostess" is one of common understanding. The court, in instructing the jury with reference to finding as to the alleged overt acts, sufficiently directed the jury's attention to the meaning of the expression "B girls." This contention regarding the giving of additional instructions on the court's own motion is not sustainable.

Appellant asserts further that the court erred in refusing to instruct the jury, as requested by appellant, that if the crime of conspiracy to violate the Alcoholic Beverage Act, as alleged in count 3, was committed by anyone, then under the evidence and *as a matter of law* Burke, Judy, Connie, Rusty, and four other girls (specifically mentioned in the requested instruction) were accomplices. The four other girls, who had been employed as waitresses at some of appellant's bars, testified in substance the same as Judy, Connie, and Rusty had testified regarding their duties and the instructions given them by appellant. The court instructed the jury properly with reference to the definition of an accomplice and with reference to the requirement that the testimony of an accomplice must be corroborated. Also an instruction was given which was to the effect that the jury should determine from the evidence whether a witness was an accomplice, unless the court specifically instructed the jury that a witness was an accomplice. There was a given instruction, with reference to count 3, that as a matter of law Burke was an accomplice. The jury was also instructed that a barmaid or bartender could be guilty of conspiracy to violate said act, and that a person need not be a licensee or a manager of a bar to be guilty of so conspiring, but that any person who entered into an agreement with one or more persons that they would join together to violate the act was guilty of conspiracy. Reference should be made to the three sections of the Business and Professions Code which it is alleged that appellant and Burke conspired to violate. Section 25657, subdivision (a), which

relates to employing a ''hostess'' for the purpose of procuring purchases of alcoholic beverages, has been quoted hereinabove. Subdivision (b) of said section provides in substance that it is unlawful, in any place of business where alcoholic beverages are sold to be consumed on the premises, to employ or knowingly permit anyone to loiter in the premises for the purpose of begging or soliciting any patron therein to purchase such beverages for the one begging or soliciting.

Section 25658, subdivision (a), provides: ''Every person who sells, furnishes, gives . . . any alcoholic beverages to any person under the age of 21 years is guilty of a misdemeanor. (b) . . . (c) Any on-sale licensee who knowingly permits a person under the age of 21 to consume any alcoholic beverage in the on-sale premises, whether or not the licensee has knowledge that the person is under the age of 21 years, is guilty of a misdemeanor.''

Section 25663 provides: ''Every person who employs or uses the services of minors in or on that portion of any premises, during business hours, which are primarily designed and used for the sale and service of alcoholic beverages for consumption on the premises is guilty of a misdemeanor.''

Even if it be assumed that those witnesses were accomplices, it appears that the evidence was sufficient to show that their testimony was corroborated. As above stated, appellant testified he saw Judy, Connie, and the sailor at the table, and saw them drinking champagne; Judy told him that the sailor had a considerable amount of money; he told her to tell that to Burke; he might have given Judy a ''word of praise'' regarding her conduct with the sailor, and it was probable that he gave her ''a little urge.'' The court did not err prejudicially in refusing to give said requested instruction.

■ Appellant contends further that the evidence was insufficient to support the verdict of guilty of conspiracy to violate said sections 25658 and 25663, as charged in count 3. He argues that there was no evidence that he knew that Judy, Connie, or Rusty was a minor; and there was no evidence that he conspired with any one to sell to, or furnish the girls with, any alcoholic beverage or to employ them, knowing that they were minors. The jury could infer from the evidence that he knew that those girls were minors. He did not ask their age. It is reasonable to assume that their appearances placed him on notice that there was a question as to their minority. The jury could infer that the acts and conduct of appellant and Burke in employing Judy, Connie, and

Rusty, in using their services, and furnishing them with intoxicating liquor were based upon an understanding between appellant and Burke "to make as good use of the girls as possible" in selling drinks and inducing the male customers to spend money. Burke testified that appellant told him to have the girls "push" the sale of champagne, and that the purpose of the girls was to associate and drink with male customers and induce them to spend money. He also testified that he and appellant discussed making "as good use of the girls as possible" in selling drinks and inducing the male customers to spend money. Judy and Connie testified to the effect that appellant and Burke told them to sit at the table and drink with male customers if the customers so requested, and to get the customers to buy as much champagne as possible, and to keep the sailor there as long as they could. As above shown, appellant testified to the effect that, after he saw Judy and Connie at the table with the sailor, and after she had told him that the sailor had money, he encouraged her with respect to her conduct with the sailor. Rusty testified to the effect that appellant instructed her to serve champagne to Judy, Connie, and the sailor at the table where they were sitting. It is not necessary to refer specifically to other evidence, hereinabove mentioned, which indicates appellant's implication in a conspiracy to violate said sections. The evidence was sufficient to support the verdict.

The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied February 17, 1959, and appellant's petition for a hearing by the Supreme Court was denied March 25, 1959.