[No. B150228. Second Dist., Div. Seven. May 29, 2002.]

JOSE ANTONIO LOPEZ, Plaintiff and Appellant, v. CONSUELO BACA, Defendant and Respondent.

1010

## COUNSEL

Law Offices of Roman Y. Nykolyshyn, Roman Y. Nykolyshyn; Law Offices of Barry J. Lane and Barry J. Lane for Plaintiff and Appellant.

Daniels, Fine, Israel & Schonbuch, Michael N. Schonbuch and Scott A. Brooks for Defendant and Respondent.

## OPINION

**PERLUSS, J.**—Plaintiff Jose Antonio Lopez (Lopez) appeals a judgment in a premises liability action entered in favor of defendant Consuelo Baca (Baca) after the trial court granted Baca's motion for summary judgment. Lopez, who was shot in the head by another patron while attending a night-club Baca owned, sued Baca for negligence, claiming Baca unreasonably failed to provide security guards to check customers for weapons before allowing them to enter the premises. The trial court concluded Baca did not owe a duty to provide security guards because the shooting in this case was unforeseeable as a matter of law. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts*

The facts set forth in the parties' separate statements are undisputed. Baca, owner of El Castillo Nite Club (the club), hired women to solicit the club's

male patrons to buy drinks for them at an elevated price and then paid the women a commission from the proceeds of each sale.[1] In February 2000 a woman approached Lopez at the club and asked him to buy her a beer. When Lopez refused to pay the elevated price, the woman called Lopez a derogatory name and returned to her male companion. Soon thereafter, the woman's male companion left the club, returned with a gun and, without "any warning," shot Lopez in the head. Neither Baca nor Lopez knew the shooter or had seen him in the club before that night.

The club employed a security guard to check customers for weapons on Friday, Saturday and Sunday nights, but not on weeknights. Lopez was shot on a Tuesday night when no security guard was on duty.

## 2. *Proceedings*

Lopez sued Baca for negligence, alleging Baca unreasonably failed to provide security guards to protect patrons from violent attacks. Baca brought a motion for summary judgment asserting she owed no duty to hire security guards on weeknights because violent crime at the club was unforeseeable. She claimed she was unaware of any other shootings or "altercations" occurring at the club prior to this incident. She also argued there was no causal connection between the lack of security guards and Lopez's injuries.

Lopez opposed the motion, asserting that violent attacks at the club were rampant. Lopez included with his opposition a computer printout from the Los Angeles Police Department purportedly showing reported crimes and arrests at the club between 1995 and 2000. Lopez alleged, without a supporting declaration, that the printout revealed 16 reported crimes at the club's address between 1995 and 2000, including two assaults with a deadly weapon in August 1995 and in September 1996, respectively, and five robberies between 1995 and 1997. No descriptive details about any of these purported incidents were provided. Lopez also attached reports from the Department of Alcoholic Beverage Control, showing it had temporarily suspended the club's liquor license in 1995 due to the club's illegal practice of paying employees to solicit customers to buy drinks. One day before the

---

[1]The undisputed evidence showed that, when a male patron at the club buys a beer for himself, Baca charges $3. When he buys it for a woman who solicits the purchase, Baca charges $6 and pays $3 commission to the woman who solicited the purchase. This practice is illegal. (Pen. Code, § 303; Bus. & Prof. Code, § 25657.) The parties refer to the women engaged in this practice as *"Ficheras,"* a Spanish slang term.

hearing, Lopez filed a "supplemental separate statement" attaching an additional computer printout from the Los Angeles Police Department, purportedly showing 236 "police patrol calls for service" made at the club from January 1995 through July 2000.[2]

Baca objected to all of these documents, asserting lack of foundation and relevance.[3] Among other things, Baca insisted that none of the evidence showed prior similar crimes. The trial court sustained Baca's objections to all of Lopez's proffered evidence[4] and granted summary judgment in Baca's favor. The court concluded Baca had no duty to provide security guards to protect Lopez because there was no admissible evidence the shooting was foreseeable; alternatively, the trial court held, even if there was such a duty, there was no causal connection between the absence of a security guard and Lopez's injuries.

Lopez filed a motion for reconsideration, asserting the same arguments as in his opposition to the summary judgment motion. This time, however, Lopez included narrative police reports describing some of the arrests that took place at the club five years earlier (in 1995), including one assault with a beer bottle, one attempted robbery and a negligent discharge of firearm by

---

[2]There were, in fact, only 119 calls reflected on the computer printouts, not 236 as claimed by Lopez. The printouts were accompanied by a custodial declaration from the police department attesting that the documents were prepared in the ordinary course of business. The declaration did not contain a description or explanation of the content of the documents.

[3]With respect to the "printout of arrests and crimes" submitted with Lopez's opposition to the motion for summary judgment, Baca's written evidentiary objections, filed prior to the hearing on the motion in conformity with California Rules of Court, rule 345, stated: "Lack of foundation, Evidence Code § 403; Irrelevant, Evidence Code § 350; Over-broad; Fails to distinguish between phone inside EL CASTILLO and the public pay phone outside with the same 3054 W. Pico Blvd. Address; Fails to establish prior similar incidents; and Fails to lay foundation between different codes, abbreviations and references."

[4]Although the dissent states the trial court simply issued a blanket, one sentence ruling sustaining all of Baca's evidentiary objections without "engag[ing] in a discussion on those objections" and without "allow[ing] [Lopez]'s counsel the opportunity to respond" to the objections (dis. opn., *post*, at p. 1021), the record shows otherwise. The trial court announced in a tentative ruling its intention to sustain the objections to the prior crimes evidence on foundation and relevance grounds, noting expressly that the evidence on its face appeared to involve mostly drug-related crimes, not criminal conduct similar to that at issue in this case. The court then entertained argument from Lopez's counsel directed to these specific points of concern, as set forth in the appendix to the dissenting opinion. Unpersuaded by the efforts of Lopez's counsel to counter the analysis in the tentative ruling, the trial court sustained Baca's objections. Far from the unconsidered ruling suggested by the dissent, the order sustaining the objections was based on careful consideration of each argument presented. The trial court fully discharged its responsibilities to rule on the evidentiary objections presented. (See *City of Long Beach v. Farmers & Merchants Bank* (2000) 81 Cal.App.4th 780, 784 [97 Cal.Rptr.2d 140] ["Trial courts have a duty to rule on evidentiary objections. Part of the judicial function in assessing the merits of a summary judgment or adjudication motion involves a determination as to what evidence is admissible and that which is not."].)

a patron who shot at the floor. Lopez also included a declaration from a "security expert" who had reviewed the police records, determined that 60 percent of all the reported crimes at the club took place during the week, and opined that the lack of a security guard was a "contributing factor in the shooting of Mr. Lopez." Baca objected to the reconsideration motion on several grounds, including the motion was untimely, contained no "new or different facts" and was unaccompanied by an affidavit from the moving party attesting to the basis for the motion. The trial court denied Lopez's reconsideration motion and entered judgment in favor of Baca. Lopez filed a timely appeal from the judgment.

CONTENTIONS

Lopez contends the trial court erred in concluding that Baca had no duty to employ security guards during the week. Lopez also insists a triable issue of material fact exists as to whether the absence of a security guard was a "substantial factor" in bringing about his injuries.

DISCUSSION

1. *Standard of Review*

Summary judgment is proper where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ■ We review the trial court's grant of summary judgment de novo, "considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.] ■ In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .'" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477 [110 Cal.Rptr.2d 370, 28 P.3d 116]; Code Civ. Proc., § 437c, subd. (*o*)(2).) Where the plaintiff fails to satisfy this burden, judgment in favor of the defendant shall be granted as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

■ Lopez does not challenge the trial court's ruling sustaining Baca's objections to certain evidence offered in opposition to the summary judgment motion. As a result, any issues concerning the correctness of the trial

court's evidentiary rulings have been waived. (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 739, fn. 4 [41 Cal.Rptr.2d 719]; see *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 785 [79 Cal.Rptr.2d 273].) We therefore consider all such evidence to have been properly excluded. (See *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546 [35 Cal.Rptr.2d 574] [not the proper function of Court of Appeal to search the record on behalf of appellants or to serve as "backup appellate counsel"].)

## 2. The Trial Court Properly Concluded Baca Owed No Duty to Lopez to Provide Security Guards Because the Shooting Was Unforeseeable as a Matter of Law

It is well settled that landowners owe a duty to tenants and invitees to maintain their premises in a reasonably safe condition. (*Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1189 [91 Cal.Rptr.2d 35, 989 P.2d 121] (*Sharon P.*), disapproved on another ground in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, fn. 19 [107 Cal.Rptr.2d 841, 24 P.3d 493].) This duty encompasses a responsibility "to take reasonable steps" to secure the premises against "*foreseeable* criminal acts of third parties that are likely to occur in the absence of such precautionary measures." (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 [25 Cal.Rptr.2d 137, 863 P.2d 207] (*Ann M.*), italics added.) Foreseeability in this context is a question of law for the court. (*Id.* at p. 678.) In analyzing the existence and scope of a landowner's duty, the court must balance the foreseeability of the harm alleged against the burden of the duty to be imposed—the greater the burden of preventing the harm, the higher the degree of foreseeability required. (*Sharon P.*, at p. 1195.) Because the burden of employing private guards to protect against third party criminal conduct is great, "a high degree of foreseeability is required in order to find that the scope of a landlord's duty of care includes the hiring of security guards. . . . [T]he requisite degree of foreseeability rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises." (*Ann M.*, at p. 679.)

### a. Lopez has abandoned the theory that the landlord had notice of prior similar crimes occurring on the premises.

In arguing that the trial court erred in concluding that Baca had no duty to hire security guards on weekdays to protect patrons of the club from criminal activity, Lopez does not contend, as he did in the trial court, that prior incidents of similar violent crime occurring at the club obligated Baca to

ensure that adequate security measures were in place to protect the club's patrons.[5] Instead, Lopez argues that a *Fichera* bar is an "inherently dangerous" enterprise, requiring its owner to provide security for its patrons regardless of whether the nightclub experienced any prior incidents of similar criminal conduct. Alternatively, he contends that Baca's hiring of weekend security guards constitutes the assumption of an enforceable duty to protect patrons even in the absence of foreseeable criminal activity.[6]

b. *There is no evidence that the nightclub was an "inherently dangerous" enterprise.*

While conceding that evidence of prior incidents of similar crimes is ordinarily required to establish a duty to hire security guards (see *Ann M.*, *supra*, 6 Cal.4th at p. 679), Lopez insists prior similar crimes evidence is unnecessary in this case because the club's violation of statutes prohibiting payment of a commission to persons who solicit patrons to buy drinks[7] rendered the club "inherently dangerous." In *Ann M.* the Supreme Court left

[5]Because Lopez has abandoned the legal theory relating to the prior similar crimes evidence, we do not consider that legal theory or the evidence offered in connection with it on appeal. (See *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457] ["Although our review of a summary judgment is de novo, it is limited to issues which have been adequately raised and supported in [appellant's] brief."]; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834] [although review on appeal from summary judgment is de novo, it is not the appellate court's function to address arguments not raised on appeal].) To hold otherwise would negate the doctrine of waiver and require that we undertake a review of all evidentiary exclusions regardless of whether they are relevant to any of the legal arguments raised on appeal. Similarly, we decline the dissent's invitation to consider the propriety of the order denying Lopez's reconsideration motion, as Lopez does not raise that issue on appeal.

[6]In his opening brief Lopez states: "The standard premises liability case usually involves an innocent landowner on whose property allegedly unexpected criminal activity occurs. The issue then becomes whether the landowner had notice of prior similar incidents so that the landowner should have taken precautionary measures. This type of case is exemplified by *Ann M.*[, *supra*,] 6 Cal.4th 666. [¶] The present case, however is not that type of case. Here, the nightclub itself affirmatively created a dangerous condition conducive to violence by operating an illegal *Fichera* bar. . . . This is not the typical premises liability case where the defendant may claim it was surprised by some random unexpected criminal act. El Castillo affirmatively created a dangerous situation by running an illegal *Fichera* bar, which was conducive to violence and resulted in a serious shooting . . . ."

Although the dissent contends we have misconstrued Lopez's advancement of "fallback positions" as an abandonment of any reliance on a theory of liability based upon prior similar crimes, it is difficult for us to treat Lopez's statement that "this is not that type of case" as anything other than abandonment. In addition, although, as the dissent notes, Lopez's opening brief states "that the atmosphere of such a place [a *Fichera* bar] is conducive to crime is further evidenced by police reports concerning [the bar]," (dis. opn., *post*, fn. 7) Lopez offers the argument expressly to show the *Fichera* bar was an "inherently dangerous enterprise," not to show similarity between prior crimes and the instant offense.

[7]Penal Code section 303 makes it a misdemeanor for "any person engaged in the sale of alcoholic beverages, other than in the original package, to employ upon the premises where

open the question whether some commercial property is, by its very nature, so "inherently dangerous that, even in the absence of prior similar incidents, providing security guards will fall within the scope of a landowner's duty of care." (*Ann M.*, *supra*, 6 Cal.4th at p. 680, fn. 8.) There, the court intimated without deciding that certain types of property, such as all-night convenience stores and underground parking garages, may provide " ' "an especial temptation and opportunity for criminal misconduct" ' " so as to create a duty to provide heightened security measures irrespective of prior incidents of similar conduct. (*Ibid.*)

More recently, however, in *Sharon P.*, the Supreme Court retreated from its earlier suggestion in *Ann M.* that some properties could be per se inherently dangerous. Observing that crime is " 'endemic in today's society' " and that all businesses could attract crime to some extent, the court declined to find underground parking garages inherently dangerous and suggested that the "inherently dangerous" characterization was to be used sparingly, if at all; otherwise all businesses could fall victim to a per se rule that would lead to imposition of liability even in the absence of genuine foreseeability. (*Sharon P.*, *supra*, 21 Cal.4th at p. 1194.)

The designation of an "inherently dangerous property," if such a designation still exists after *Sharon P.*, is reserved for properties that "regardless of their individual physical characteristics and locations" are by their nature, prone to violence. (*Sharon P.*, *supra*, 21 Cal.4th at p. 1192.) Lopez fails to cite any evidence or any authority "from which we may confidently conclude" that *all* bars or nightclubs, or even those operating in violation of statutes precluding payment for the solicitation of beverages, are by their nature prone to violent criminal attacks and are thus inherently dangerous. (*Ibid.*) Even if there is room after *Sharon P.* for some commercial enterprises to be regarded as "inherently dangerous," requiring security as a matter of law, Lopez has not demonstrated that this enterprise is one of them.

c. *The landlord did not assume a duty to protect patrons on the weekdays when she hired security guards for the weekends.*

■ Lopez insists that by hiring security guards on the weekends, Baca *assumed* a duty to provide security at all times and for all purposes irrespective of whether she knew or had reason to know violent attacks would occur on the premises. Lopez relies on *Trujillo v. G.A. Enterprises, Inc.* (1995) 36

the alcoholic beverages are sold any person for the purpose of procuring or encouraging the purchase or sale of such beverages, or to pay any person a percentage or commission on the sale of such beverages for procuring or encouraging such purchase or sale." The same conduct is also prohibited under Business and Professions Code section 25657.

Cal.App.4th 1105, 1108-1109 [43 Cal.Rptr.2d 36]. In *Trujillo*, a fast-food restaurant hired a private guard as a security precaution even though no prior incidents of violence had occurred on the premises. When a fight broke out at the restaurant, the security guard took one youth away, leaving the other youthful patrons to continue fighting. One of the injured youths sued the restaurant in a premises liability action. In moving for summary judgment, the restaurant argued, and the trial court agreed, the restaurant owed no duty to protect patrons in the absence of prior similar incidents of violent conduct. The Court of Appeal reversed summary judgment, holding that, although it had no duty to do so, once the restaurant hired the security guard, it assumed a duty to protect customers from criminal attack and could be liable for the guard's unreasonable behavior under the circumstances. (*Ibid.*; see also *Rotman v. Maclin Markets, Inc.* (1994) 24 Cal.App.4th 1709, 1720 [30 Cal.Rptr.2d 130] ["[W]hen someone who is under no obligation to provide a service to another voluntarily undertakes to do so, he will be regarded as having assumed a duty to provide that service, and will be liable for negligence if he fails to use reasonable care in performing that duty."].)

Lopez's reliance on *Trujillo* misses the point. If Baca had employed a security guard, she would have assumed a duty and could be held liable if the guard acted unreasonably. (*Trujillo v. G.A. Enterprises, Inc., supra,* 36 Cal.App.4th at p. 1109.) Because Baca did not employ a guard on the night of the shooting, however, there was no voluntary assumption of duty.[8]

To the extent Lopez's reliance on Baca's act of hiring security guards on the weekends is intended to establish that Baca was aware of the potential for violence at the club, at most this evidence suggests she had reason to anticipate that such acts might occur on the weekends, not during the week. (See *Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161 [1 Cal.Rptr.2d 636] [inferences offered to oppose summary judgment must be reasonably deducible from the evidence and not derived from "speculation, conjecture, imagination, or guesswork"].) Having waived any issue regarding the correctness of the trial court's evidentiary rulings and abandoned his claim of "heightened foreseeability" based on the excluded evidence of prior incidents of violent conduct,[9] Lopez's claim that Baca owed a duty to protect him from attacks fails as a matter of law.

---

[8]Lopez does not cite any authority, nor have we found any, to support his dubious proposition that the assumption of a duty to do "A" (that is, employ security on the weekends) necessarily imposes a duty to do "B" (employ security during the week) as well.

[9]The reports excluded by the trial court showed only that police were called to the club's address. On their face, they did not have any tendency to show the circumstances of the call, the type of incident involved or whether the conduct prompting the call occurred in the bar itself or outside on the street and thus failed to raise any inference that the arrest/crimes involved "similar incidents" (see *Ann M., supra,* 6 Cal.4th at p. 679 [security guards required

### 3. *Lopez Cannot Rely on a Negligence Per Se Theory to Defeat Summary Judgment Where Such Allegations Were Not in the Complaint and No Motion Was Made to Amend the Complaint Prior to the Summary Judgment Hearing*

■ Lopez's related argument that the violation of statutes precluding solicitation of patrons to purchase alcoholic beverages constitutes negligence per se is also unavailing. Lopez's complaint alleges only that Baca was negligent in failing to provide security and is devoid of any allegations that the club violated any statute or engaged in the illegal practice of paying women to solicit bar patrons to purchase alcoholic beverages. As Lopez neither alleged in the complaint a claim for negligence per se based on a statutory violation nor requested leave to amend the complaint to state such a theory before opposing the summary judgment motion, he is precluded from relying on that theory as a basis for seeking denial of summary judgment. (*Bostrom v. County of San Bernandino* (1995) 35 Cal.App.4th 1654, 1663-1664 [42 Cal.Rptr.2d 669] [defendant moving for summary judgment need not negate a legal theory not alleged in the complaint]; *580 Folsom Associates v. Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 18-19 [272 Cal.Rptr. 227] [plaintiff seeking to defeat summary judgment based on legal theory not alleged in complaint must move to amend complaint before summary judgment hearing].)[10]

Even if negligence per se had been alleged in the complaint, we would still find summary judgment properly granted. Negligence per se (a presumption of duty and breach based on a defendant's statutory violation) requires a showing that plaintiff's injuries resulted from the very acts the statute was designed to prevent. (*Alejo v. City of Alhambra* (1999) 75 Cal.App.4th 1180, 1184-1185 [89 Cal.Rptr.2d 768].) The question whether the injury results from the kind of occurrence the statute was designed to prevent is a question of law (*Lua v. Southern Pacific Transportation Co.* (1992) 6 Cal.App.4th 1897, 1901-1902 [9 Cal.Rptr.2d 116]), and one we

---

only where landowner had notice of prior "similar" crimes]) and did not tend to disprove Baca's declaration that she lacked notice of prior *similar* crimes. (Evid. Code, § 210; see also *Sharon P.*, *supra*, 21 Cal.4th at p. 1191 [summary judgment proper where other crimes evidence, such as prior robberies in the vicinity of the parking garage where plaintiff was sexually assaulted, were not sufficiently similar to the sexual assault to create a duty to hire security guards]; *Lopez v. McDonald's Corp.* (1987) 193 Cal.App.3d 495, 510 [238 Cal.Rptr. 436] [in case involving duty to hire security guards to prevent mass assassination of patrons at restaurant, summary judgment proper where theft and minor assault-related crimes on premises were not the kind of "similar" criminal conduct that would have put defendant on notice].)

[10]Lopez's alternative contention that Baca's statutory violation amounted to "willful misconduct" must be rejected for the same reason. Even if it were a viable independent legal theory, neither the legal theory nor the facts supporting it were alleged in the complaint. .

find easily resolvable. The statutes in question are "morals statutes" aimed at prohibiting licensed alcohol sellers from encouraging the purchase of alcohol through employees who are paid to make their hospitality contingent upon a customer's purchase of an alcoholic beverage. (*People v. Holstun* (1959) 167 Cal.App.2d 479, 488 [334 P.2d 645].) Assault with a deadly weapon is simply not the type of injury those statutes are designed to prevent.[11]

## DISPOSITION

The judgment is affirmed. Lopez shall pay Baca's costs on appeal.

Woods, J., concurred.

**JOHNSON, Acting P. J.,** Dissenting.—I regretfully but respectfully dissent from what I view as a miscarriage of justice. As the majority opinion itself reminds us, appellate courts are instructed to review the trial court's grant of summary judgment de novo and in doing so to consider all of the evidence the parties offered in connection with the motion (except that which the [trial] court properly excluded).[1] This means we have an affirmative duty to consider all the evidence the parties tendered unless we find the evidence the trial court excluded was properly excluded under operative principles of the law of evidence. Thus, whether appellant formally challenged the trial court's evidentiary rulings in his briefs to this court is irrelevant. In our de novo review of the summary judgment we cannot properly ignore evidence appellant tendered to the trial court unless we conclude it was properly excluded by the trial court.

It clearly would have been the better and safer practice for appellant to have included a specific section in his opening brief labeled "Erroneous Evidentiary Rulings." To do so, however, appellant would have to have asked permission to file a brief much longer than the Rules of Court ordinarily permit. Respondent lodged objections to 19 categories of evidence and as to each listed multiple grounds. I counted 66 separate objections in total. None of them, however, cites a single case or provides any justification or explanation beyond the number of a code section.

The trial court provided no assistance either, because the judge sustained all 66 of the objections in a single sentence granting all objections. During

---

[11]In light of our holding that Baca owed no duty to provide security guards to protect Lopez, we need not reach Lopez's causation arguments.

[1]*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477 [110 Cal.Rptr.2d 370, 28 P.3d 116], quoted in majority opinion, *ante*, at page 1014.

the hearing on the summary judgment motion, appellant's counsel attempted to argue against certain specific objections to specific pieces of evidence. But the trial court did not attempt to refute appellant's argument or even engage in a discussion on those objections. Instead the judge merely mentioned some other objection on the list, then did not allow appellant's counsel the opportunity to respond to that second objection.

It is argued the trial judge thoroughly considered these 66 objections before deciding to grant each and every one of them. The record belies that assumption. Attached to this dissent are appendices containing all portions of the record related to the lodging, consideration, and ruling on these objections.

Appendix A has the three and a half pages into which Consuelo Baca's counsel managed to pack his 66 objections to 19 categories of evidence. As the cover page indicates, these objections were lodged only three days before the hearing. Inevitably, as even a cursory review of that appendix reveals, the brevity of this document precluded any written discussion of how and why even one of these objections applies to the item of evidence Baca suggests should be excluded. Somehow, however, the trial judge managed to figure out how each of these objections applied, researched them, and concluded every one of them provided an independent and sufficient reason for excluding the category of evidence against which they were lodged. Having done so, the trial court included a sentence in its tentative ruling sustaining all those objections "for the reasons given" in appendix A.

Appendix B has the five pages of transcript from the summary judgment hearing containing the court and counsel's entire discussion of these 66 objections. When Jose Antonio Lopez's counsel asks to respond to the exclusion of the first item of evidence—the police reports from the Los Angeles Polie Department—the judge first reminds him the court "sustained all the objections for the reasons indicated." The lawyer then takes one of the specific objections to those reports, the lack of authentication, and points out the documents he submitted include official certifications sufficient to overcome that objection, and also fall within an exception to the hearsay rule and hence that objection was invalid as well. Rather than dispute this response to two of the 66 objections, the trial court merely moves on to another of the objections Baca's counsel had listed, saying "Well, he also has a relevance objection." When Lopez's lawyer volunteers to respond to that objection, too, the judge merely completes the list of other objections to that class of evidence, saying "also overbreath [sic] objection, also objects that the evidence fails to distinguish between a phone inside the bar and public pay phones outside." Lopez's counsel is only three words into his response to

these two additional objections when he is interrupted by the trial judge who still has one more from Baca's list, "Fails to establish prior similar incidents, with accent [*sic*] on the word 'similar,' those are all critical and very sound objections which the court sustained."

Lopez's lawyer is not yet discouraged by the trial judge's complete refusal to engage in any meaningful discussion or justification of any specific objection, and instead responds, "I'm going to address each of the objections, Your Honor." He starts with what seems to me a completely irrelevant and specious objection—to the effect the police in some instances may have been responding to calls originating from a telephone booth purportedly located just outside the nightclub rather than a phone inside the club. Whether the calls came from one phone or the other appears irrelevant. The calls all related to crimes allegedly occurring on the premises of the nightclub.

But Lopez's counsel was drawn into an argument over whether there was such a phone booth and whose responsibility it was to show whether it existed and which calls came from which phone. Even if relevant, this is the kind of objection better left to an Evidence Code section 402 hearing at or immediately before the trial, a factual hearing likely to be much longer than the two pages worth of consideration it received at this summary judgment hearing. To expect a plaintiff's counsel, on three days' notice, to produce the testimony and documents required to demonstrate which calls originated from where and whether it made any difference is both unrealistic and unfair. To expect him to do the same as to 65 other objections is ridiculous. Summary judgments are just that, summary proceedings. They are not suitable nor designed for the resolution of complex evidentiary issues, especially those involving the proof of foundational facts.

In any event, the trial court failed to resolve the tennis match over this particular objection. Instead, while Lopez's counsel was responding to the relevance objection as to the police "crime reports" (of the 16 specific crimes at Baca's nightclub over the prior five years), the court was looking at the "incident reports" (of the 236 responses to calls from the nightclub). This led to a confusing exchange where the lawyer is talking about three assaults with deadly weapons, four robberies, a battery, and a discharge of a gun in the nightclub and the judge responds, "But it is mostly drug related though. Look at it."

It soon becomes clear the trial court is referring to the "incident reports" not the "crime reports" document and his comments about the crimes being "drug related" is not correct as to the 16 crimes Lopez's lawyer was

discussing.[2] But this fact, if true, would not even supply valid grounds for excluding the "incident reports" document. The presence of some arguably irrelevant material in a document is not sufficient reason for excluding the entire document, only for excluding those irrelevant portions of the document.

Apparently realizing the trial judge was not seriously considering any responses to Baca's 66 objections as to the evidence Lopez already had put before the court, Lopez's lawyer shifted the discussion to evidence he had been unable to produce for the hearing—the detailed police investigative reports on the robberies, assaults with a deadly weapon and firearms which had occurred during weekday nights the previous five years. These reports, he urged, would clearly document violent criminal activity at Baca's nightclub. He explained those reports would have been before the court at this summary judgment hearing except the police department was tardy in complying with his subpoena (which it turns out was his third such subpoena for these reports) because they gave priority to such requests in criminal cases.

But the trial judge would hear none of it. Nor would he grant a short continuance of the hearing to allow the police department to comply with the order to produce these documents, which it had promised to do within two weeks. (Nor did he allow introduction of these documents when they were attached to the motion for reconsideration a couple of weeks later, accompanied by the earlier subpoenas to the police department, the first one issued some seven months before the summary judgment hearing.) Thus ended the discussion of Baca's 66 objections, without either Baca's counsel or the trial judge having explained or provided a valid justification for a single one of those objections nor for the exclusion of a single item of evidence.

Appendix C is the final order granting summary judgment and sustaining all 66 objections to all 19 categories of evidence. It is as close as the trial judge gets to justifying all those rulings. In its entirety this part of the order reads: "GOOD CAUSE HAVING BEEN SHOWN THEREFOR [*sic*], IT IS ORDERED . . . [¶] 1. The court sustains all of defendant's evidentiary objections filed

---

[2]But this exchange does make it clear the trial court is fully capable of interpreting the abbreviations and numbers used on the "incident reports" as shorthand references to what crimes were involved in those 236 police calls. This dissolves yet another of the multiple objections levied against this evidence—but one Lopez never had a chance to reach—the alleged failure to accompany this document with an explanation of the meaning of these abbreviations and numbers. A summary judgment is heard by a judge not a jury. If the evidence can be understood by the factfinder hearing the summary judgment motion, that should be sufficient. Producing testimony that will make it understandable by a jury can await this later stage of the proceedings, and its absence cannot be grounds for excluding the underlying evidence at the summary judgment stage.

on February 13, 2001." Having excluded nearly all of Lopez's evidence bearing on the issue of whether violent criminal activity had occurred at Baca's nightclub prior to Lopez's near fatal shooting, the trial court order then continues: "2. The reading of all of plaintiff's evidence reveals that the evidence surviving rulings on evidentiary objections is immaterial as to those issues of foreseeability and causation." Accordingly, the court grants summary judgment against plaintiff Lopez.

To properly respond to this blunderbuss of evidentiary pellets, appellant would first have had to reconstruct the possible basis for respondent's one or two word, general and vague, objections—all 66 of them. Then appellant would have had to discuss why each of those objections was not valid—often for multiple reasons, as to the particular item of evidence at issue. He would have had to repeat that effort 66 times—and would thereby have to produce a veritable treatise on the law of evidence. That, it seems to me, is an unrealistic responsibility to thrust on this or any other appellant.

It certainly is beyond what this court or any appellate court should be expected to do. Yet, given what respondent did below—and what the trial court not only permitted but ratified by granting all 66 of these objections with no explanation or justification—this would be the only course of action available to us if we were to fulfill our affirmative duty to determine whether the trial court *properly* excluded each and every one of these 19 categories of evidence.

At this point, I wish to register the strongest disapproval of the approach adopted below in the presentation and treatment of evidentiary objections in summary judgment proceedings. To allow a party to lodge a barrage of objections, with no supporting factual and legal argument to support them, is to impose an unfair burden on the opposing party. And for a trial court to grant those objections en masse with no explanation for its decisions places an undue burden on the appellate court as well as the opposing party.

It is difficult to imagine the trial court here individually analyzed these 66 objections and found them all valid under the Evidence Code and relevant decisional authority. A cursory review of the 66 objections reveals many completely lack merit. For others, the merit, if any, certainly is not apparent from the mere label "irrelevant" or "lack of foundation" or "vague" or "hearsay not falling within any of the hearsay exceptions." A trial court owes it to this court, if not the parties, to select the specific objections it finds possess merit and explain its grounds for so finding, either in writing or on the record. Here the trial court did neither, and in fact did not defend its decision as to specific objections when its blanket ruling was challenged during the summary judgment hearing.

Merely as an illustration of the questionable nature of the trial court's blanket affirmative of all 66 of these objections, I make a quick examination of the court's exclusion of the computer printouts from the police department. The first printout was a summary reflecting 16 reported crimes at the club during a five year period, including two assaults with deadly weapons and five robberies. The other computer printout reflected 236 "police patrol reports for service" during that same five years.

Both of these computer printouts were *authenticated* as public records.[3] They were *not hearsay* because they were introduced to establish the bar owner had notice of criminal activity,[4] not necessarily for the truth of the statements therein. But even if considered hearsay they fall under at least two alternative *hearsay exceptions*—as public records[5] and as business records.[6] The certifications recited all the foundational facts for either of these exceptions to the hearsay rule—kept in the regular course of police department business, recorded at or near the time of the events reported by declarants who had personal knowledge, etc. From the record of the summary judgment hearing it is apparent the trial court fully comprehended the abbreviations, code sections, etc. the officers employed in these summary reports, thus they were *not too vague* for the trier of fact on the summary judgment motion. This evidence also is *relevant* for at least two reasons. First, it contradicts and thus impairs the credibility of the bar owner's declaration claiming violent crime was unforeseeable and she was unaware of such criminal activity at her club. Second, the substance of these police reports supports an inference strongly supporting a triable issue this bar had experienced significant violent criminal activity prior to the shooting of appellant.

To fully explain why each of the objections lodged against this evidence lacks merit would require several more pages, and there still would be

---

[3]Evidence Code sections 1450-1454; *Alvarez v. State of California* (1999) 79 Cal.App.4th 720, 728-729 [95 Cal.Rptr.2d 719].

[4]Evidence Code section 1200 (" 'Hearsay evidence' is evidence . . . that is offered to prove the truth of the matter stated."); see, e.g., *Magnolia Square Homeowners Assn. v. Safeco Ins. Co.* (1990) 221 Cal.App.3d 1049, 1057 [271 Cal.Rptr. 1] (notice of defects not hearsay).

[5]Evidence Code section 1270 (" 'a business' includes every kind of business, governmental activity, . . . whether carried on for profit or not."); Evidence Code section 1271 (evidence of events, etc. recorded in regular course of business is admissible as exception to hearsay rule); *Rousseau v. West Coast House Movers* (1967) 256 Cal.App.2d 878, 887 [64 Cal.Rptr. 655] (police reports admissible as business records to prove prior criminal acts where based on officer's observations); *Aguimatang v. California State Lottery* (1991) 234 Cal.App.3d 769, 798 [286 Cal.Rptr. 57] (computer printouts admissible as business records).

[6]Evidence Code section 1280 (evidence of events, etc. recorded by a public employee *within the scope of employee's duty is admissible as exception to hearsay rule*). The official records exception, unlike the business records exception, benefits from the statutory presumption that an official duty has been regularly performed and thus does not require a witness to testify about a record's identity or method of preparation, etc. (See *People v. Dunlap* (1993) 18 Cal.App.4th 1468, 1477 [23 Cal.Rptr.2d 204].)

another 18 categories of evidence and another 60 or so objections to go. But the paragraph above does suggest the daunting task appellant would have faced in preparing a brief responding to the entire roster of objections the trial court sustained.

Beyond the evidentiary issues, in my view it is not necessary the prior criminal activity be precisely identical to the crime that nearly killed appellant, as the trial judge appeared to intimate. The computer printouts need not reflect past instances where boyfriends of "B-girls" shot bar patrons who didn't like the idea of paying extra because the girl sitting next to them turned out to like them only for commercial reasons. It is enough those printouts revealed significant *violent* criminal activity *of some kind* and/or the unlawful presence and use of firearms on the premises sufficient to suggest the bar owner should provide security officers to protect patrons from the threat of physical injury. The robberies, assaults with deadly weapons (whether guns or others), and patrons possessing and firing weapons (whether negligently or intentionally) reported in these police computer printouts certainly qualify as significant violent criminal activity. At a minimum, they appear sufficient to create a triable issue this bar owner should have employed security officers to protect patrons from physical injury at the hands of third parties. The fact she did employ such officers on the three weekend nights further suggested she was aware of the potential for violent criminal activity at her bar. Only if none of the prior violent crimes were committed on weekday nights would the bar owner lack notice of the need for such preventive measures on those nights. The computer printout of the 16 violent crimes negated that possibility, since a majority of those crimes took place on weekday nights.

Once the *level* of prior violent criminal activity warranted security measures, the bar owner failed to provide those measures at her own risk.[7] If some other type of violent crime occurred, the bar owner would be liable to

---

[7]The majority opinion suggests appellant Lopez somehow waived or abandoned any claim the incidents of prior criminal activity at Baca's nightclub established the foreseeability required to impose a duty to employ security guards. It is true Lopez relied heavily, in his briefs, on the arguments the majority opinion emphasizes. He did argue the employment of security guards on weekends tended to support the inference they were required on weeknights, too. And he also argued Baca's employment of B-girls increased the risk of violence and thus increased the need for security guards at all times. (Incidentally, in my view, there is some merit in both these positions, that is, when deciding whether the foreseeability of violent criminal conduct on weeknights has reached the level requiring employment of security guards, both these factors raise that level somewhat.) But in stressing these two factors, Lopez did not abandon his claim the prior violent criminal activity on weeknights also required Baca to employ security guards on weekday nights.

In the "Statement of the Case" in his opening brief, appellant emphasizes the "fifteen arrests for criminal incidents including robberies, assaults with a deadly weapon, attempted

the victim of that crime unless, of course, the security measures required by the prior criminal activity—but which she failed to provide—could not have prevented this new crime. In the case before this court, a triable issue

robbery, a gun discharge, and a battery over the previous five years." Later he mentions the B-girl operation created a dangerous situation, but says that led to "a history of violence" and "there were 199 police calls at the nightclub address in the five years before the incident." He then devotes a full one-third of his "Statement of Facts" to the testimony of an expert whose review of the evidence showed the police records of all these violent crimes and that 60 percent occurred during weekday nights. (In determining whether appellant "abandoned" the violent prior criminal activity argument in his briefing, it is irrelevant this particular expert's testimony may not have been admissible in the summary judgment motion. As demonstrated above, the evidence of this prior violent criminal activity was present elsewhere in the record.)

In the "Argument" portion of the brief, Lopez's counsel first addressed "Duty" and continued to point to the prior violent crimes as evidence Baca had a duty to employ security guards. "That the atmosphere of such a place is conducive to crime is further evidenced by the police reports concerning El Castillo. El Castillo is essentially a magnet for crime. The nightclub had previously experienced violent incidents such as robbery, battery, and assault with a deadly weapon - the incident which occurred in the present case." The fact Lopez argued Baca had caused the violent criminal acts to occur by operating an illegal "fiscera" nightclub does not mean Lopez had somehow "abandoned" the argument this pattern of prior criminal acts made future crimes foreseeable and therefore created a duty. Indeed, unless the operation of the nightclub resulted in criminal activity there would be no need to employ security guards.

In the "Breach of Duty" section of his brief, Lopez once again relied in part on the existence of prior criminal activity, arguing, "[e]ven if the present case is treated as a purely notice case where the only question is whether the innocent defendant had notice that criminal acts were foreseeable, it is apparent that El Castillo had notice." And later, he argues, "The primary role of the security guards at El Castillo was to check for weapons, thereby demonstrating that El Castillo recognized that its operation attracted patrons with weapons. [¶] . . . There is nothing to show that days such as Tuesdays are immune from the danger present on other days. . . . 60 percent of the serious incidents reported by the Los Angeles Police Department at El Castillo occurred Monday through Thursday."

This does not sound like an appellant whose opening brief has waived or abandoned the argument that Baca had notice of enough prior criminal activity at her nightclub during weekday nights to require her to employ security guards. In his reply brief, Lopez makes alternative arguments. First, he argues the police reports and other evidence of prior criminal activity were erroneously excluded. Second, he argues, assuming such evidence remains properly excluded on appeal, the other admitted evidence was sufficient to defeat summary judgment. So even in his reply brief, Lopez does not "abandon" his argument that prior violent activity established foreseeability. He merely provides a series of fallback arguments in case we rule that evidence inadmissible.

"While this evidence was excluded below, it is admissible hearsay to show that El Castillo had been running an illegal Fichera bar for years where the nightclub address was a magnet for criminal activity and had a long police record. [¶] The main function of this additional evidence was to show prior similar incidents but such incidents are not necessary to the resolution of this case." Lopez then proceeds to use the unobjected to evidence to establish his fallback positions—Baca ran an illegal operation which was inherently dangerous and thus had a special duty to employ security guards and/or she had assumed the duty to employ security guards and breached that duty by failing to employ them on weekday nights.

exists whether the prior criminal activity justified the employment of security guards.

I now move on to the second ground the trial court asserted for granting summary judgment. After excluding all the evidence of prior violent criminal activity and therefore finding there was no need for Baca to employ security guards on weekday evenings, the court also raised the causation issue. "There's no showing the failure to provide a security guard caused the shooting. That's the basic problem." On this issue, however, the admitted evidence was more than sufficient to create a triable issue the absence of a security guard was a "but for" and proximate cause of Lopez's injuries.

Here the evidence before the court on the summary judgment motion established the victim got into an altercation with the assailant's girlfriend when the victim discovered she was a B-girl not a fellow customer. The assailant became so enraged he pushed appellant against the wall, then left the bar to get a gun. Still enraged, he returned to the bar with the weapon he retrieved from his car, approached appellant, held the gun to his head, and shot him.

According to evidence in the record, including respondent's own deposition, one of the primary duties of the security guards the bar employed on weekends was to search customers for firearms before they entered the premises. Another B-girl employed at the nightclub described in some detail how the weekend security guards patted down patrons before they entered the premises.[8] At her deposition, Lopez's counsel asked this witness, Alma Rosa Granados Aguilar, "Did you also see him [the security guard] checking the men who were going into the nightclub on weekends?" She replied, "Yes." When asked what was done to check them, Ms. Aguilar responded, "He would check all the way down like this [gesturing down her body]." The lawyer then asked, "So he would check his legs check his sides, his chest, his pockets? Do you know what he was checking for?" Ms. Aguilar's response: "So they wouldn't have any weapons."

[8]The trial court evidently misunderstood the true facts as reflected in the record. Somehow the judge gained the impression the assailant merely walked in off the street and shot Lopez—rather than being present in the bar, becoming angry when Lopez refused a high priced beer for the assailant's B-girl girlfriend, physically assaulting Lopez, and then going out to his car and returning with a gun. During the summary judgment hearing the trial judge first said, "I know the whole history of the case. I've read it backwards and forwards." Shortly thereafter, the judge said, "How did [the B-girl] activity contribute to this unfortunate event where somebody walks in off the street and puts a bullet in your client's head?" Obviously, the motive for this particular shooting arose directly from the B-girl activity at the nightclub and was not a random shooting by someone wandering in off the street. But there is at least a triable issue the presence of security guards would have prevented the shooting under either scenario, because the guards had the duty to search and disarm anyone entering the nightclub.

So had there been a security guard on duty that fateful weekday night there is at least a triable issue this guard would have performed his prime function and prevented the assailant from reentering the premises with the weapon he used to shoot appellant in the head. Indeed, even a moderately observant security guard probably would have intervened at an earlier point in this series of events and prevented the criminal assault—either by restraining or removing the B-girl's boyfriend. (The presence of such a guard may have been enough in itself to dissuade the assailant from this violent course of action.) Unless we are willing to say these guards lack the required skill as a matter of law we are left with a triable issue on the causation issue.

If the trial court erred in excluding the evidence appellant originally tendered, it also erred in refusing to grant appellant's request for a continuance to procure the more detailed police arrest and incident reports on which the computer printouts were based. During the oral argument on the summary judgment motion, appellant responded to the trial court's exclusion of the police computer printouts with a request for a short continuance. He advised the court he had subpoenaed the full police reports, including the officers' notes and the narratives of all the crimes reflected on those printouts and expected to receive those documents shortly. He also advised the court he would have had them long before the hearing except the department told him they were giving priority to such requests in criminal cases. And indeed appellant had first subpoenaed all these police documents seven months before the summary judgment hearing—and only three months after filing his complaint. He also had issued two further subpoenas when the requested police reports were not forthcoming. He ultimately obtained an order requiring the department to turn over the records some four days before the summary judgment hearing, an order the department failed to honor, thus depriving appellant of these detailed investigation reports at the time of the hearing. The police reports finally became available two weeks after that hearing.

In my view, the trial court abused its discretion in denying appellant the rather short continuance required to acquire and submit the detailed police reports he had subpoenaed over seven months earlier. Appellant had been more than diligent in his efforts to obtain these records from the police department. The trial court's asserted reason for denying the continuance—the records should have been subpoenaed earlier—does not square with the facts in the record. Accordingly, I would reverse the denial of the continuance as well and consider the evidence appellant would have been able to put before the trial court had the court granted that request. (By the way, the reconsideration motion is based in part on a claim the trial court erred in

refusing to grant the continuance appellant's counsel requested during the summary judgment proceedings.)

The evidence appellant could not introduce because the trial court denied the requested continuance further strengthens appellant's claim he had created triable issues on the prior criminal conduct and causation issues. The more specific information as to certain of the crimes listed in the police department's initial computer printouts bolstered the earlier submission. The computer printouts reflected 12 of 17 crimes occurred on weeknights when the nightclub had no security guards. The police reports gave detailed information about several of the violent crimes which took place on *weeknights*—an attempted robbery, an assault with a deadly weapon, a robbery with a gun, and negligent discharge of a firearm involving a customer who fired seven rounds into the bar. This evidence directly refutes the bar owner's declaration she knew of no violent activity on her premises during weeknights. Beyond that, this evidence firmly establishes the foreseeability of such criminal acts, including the threat of firearms on the premises, and the need to supply security guards on weeknights as well as weekends.[9]

For these reasons I conclude there was more than ample evidence to create triable issues as to foreseeability and causation. Unfortunately, the trial court struck this evidence erroneously and in a blanket fashion which imposed an onerous and unfair burden on appellant to oppose and on this court to evaluate the validity of those decisions. Therefore, I would reverse on two grounds.

First, the trial court's method of sustaining 66 evidentiary objections (which respondent had failed to explain or justify) with a single sentence should not be effective to sustain any of those objections. Hence all that evidence should be deemed admitted for purposes of this summary judgment motion. Otherwise opposing parties and appellate courts will face impossible burdens in opposing and reviewing these en masse evidentiary rulings.

Second, I conclude the one major category of evidence discussed in this dissent—the police computer printouts of arrest and incident reports and the reports themselves as to some of those crimes—was both admissible and sufficient in itself to raise triable issues as to the foreseeability of violent

---

[9]I don't think it is necessary or important to decide whether this court should also consider the expert testimony appellant tendered with his reconsideration motion. Unlike the detailed police reports it is not evidence appellant's counsel mentioned in his request for a continuance. But if considered, the expert's testimony, especially his opinion fully 60 percent of the criminal activity at the bar occurred on weekday nights, is yet further, very powerful evidence demonstrating foreseeability and supporting a duty to supply security guards on weeknights in order to protect patrons from violent criminal acts.

activity. Other evidence not subject to the trial court's blanket evidentiary ruling established triable issues as to causation. The trial court based its summary judgment on the purported absence of evidence on those two issues. In that, as well as its evidentiary rulings, the trial court was in error.

Finally, as treated in the majority opinion, this case raises a fundamental issue about the role of appellate courts in reviewing summary judgments. That opinion relies heavily on two related contentions: First, the appellate court cannot review the propriety of the trial court's exclusion of some 19 items of evidence because Lopez is deemed to have waived any opposition to those evidentiary rulings. Second, the appellate court cannot consider whether the evidence in the record establishes a triable issue that the level of violent criminal activity required security guards on weekday nights, because Lopez is deemed to have "abandoned" this argument.

For reasons explained above (see pp. 1020-1024, *ante*), I conclude Lopez had no responsibility to oppose the trial court's evidentiary rulings because Baca's 66 evidentiary objections were not adequately lodged and the trial court did not make sufficient rulings as to any of those objections to which anyone could reasonably respond. Furthermore, also for reasons explained above (see fn. 8, *ante*), I conclude Lopez did *not* abandon the argument that the level of violent criminal activity occurring at Baca's nightclub during weeknights imposed a duty to employ security guards on those nights as well as weekend nights. Instead what he did was emphasize Baca *caused* that level of violence by operating her nightclub in an illegal manner. She was not simply an innocent property owner operating a socially useful business in a high crime area who experienced enough violent crimes on her premises to require her to take security measures to protect her customers. By employing B-girls in violation of the law, Lopez contended she was *responsible* for the increased level of violent crimes on her premises. In that sense it was not a "pure notice" case. But this does not mean Lopez "abandoned" any contention the violent criminal activity on the premises required security guards.

Nonetheless, for the sake of discussion, I will assume appellant's opening brief should have challenged the propriety of the trial court's order sustaining the 66 objections in his opening brief. Furthermore, I will assume he did not properly raise and argue the position that the prior violent criminal activity Baca's nightclub experienced on weeknights imposed a duty to employ security guards on those nights as well as weekends. This leaves the question whether an appellate court is a "potted plant" unable to consider issues unless they are spoon fed by the parties. Reading a record redolent with error, must we ignore the stench just because the lawyers failed to rub our noses in it? I don't think so.

Indeed, the practices of this division and most if not all other appellate courts in this state belie such an approach to the appellate function. As of the moment this majority opinion and my dissent are filed, this division has at least one and probably more letters out to counsel in other cases requesting them to brief issues the aggrieved party failed to raise in the original round of briefing. In the past 20 years, I know of literally scores of cases we have decided based on issues not raised in the briefs. Among other situations during that period, we have affirmed summary judgments based on alternative grounds not mentioned in the respondents' briefs, and we have reversed summary judgments based on triable issues we found in the record, which appellants had failed to identify in their briefs. Indeed, this practice is so common the law was changed over a decade ago to require appellate courts to provide both sides an opportunity to respond when the appellate court elects to decide a case on an issue not discussed in the briefs.[10]

It is difficult to see how it could be otherwise. The Courts of Appeal, more than the Supreme Court, are in the "error correction" business. For all cases of that genre, where no important unsettled legal issues are at stake, we are indeed the "court of last resort." This is a great responsibility. The parties depend upon us to insure justice was done in the trial court—that the judges there applied the correct legal principles to the true facts of the case. These are not contests to choose which lawyer did the best job. Nor, at the appellate level, should a party suffer because his or her lawyers were inept in their briefing. If the court's research—including its own independent research—demonstrates the correct legal principles when applied to the facts revealed in the record yield a certain result, then that should be the judgment of the court. The lawyers' lapses should not and cannot relieve the appellate court of its duty nor disarm it of its ability to insure the parties receive justice in the trial courts of this state.

Thus, even assuming appellant's lawyer, in his briefing, erroneously waived the evidentiary issues and "abandoned" the key substantive issue, I would regard it as irrelevant in this case. If this court fulfills its duty to apply the correct legal principles to the record before it, certain propositions are crystal clear: First, the evidence of prior violent criminal activity was admissible and thus improperly excluded. Second, this evidence was sufficient, at a minimum, to create a triable issue Baca had sufficient

[10]"Before the Supreme Court, a court of appeal, or the appellate department of a superior court renders a decision in a proceeding other than a summary denial of a petition for an extraordinary writ, based upon an issue which was not proposed or briefed by any party to the proceeding, the court shall afford the parties an opportunity to present their views on the matter through supplemental briefing. If the court fails to afford that opportunity, a rehearing shall be ordered upon timely petition of any party." Government Code section 68081, added by Statutes 1989, chapter 262, section 1, page 1307.

notice to have a duty to employ security guards on weeknights at her nightclub. And third, uncontested evidence was sufficient, at the least, to create a triable issue the security guards, had they been on duty, would have disarmed or restrained the assailant and thus prevented him from shooting Lopez in the head. This is enough to reverse summary judgment in this case, and I would do so.

On June 5, 2002, the opinion was modified to read as printed above.

1034

APPENDIX A

1721-659 YMT:YMT\-eo

**DANIELS, FINE, ISRAEL& SCHONBUCH, LLP**
1901 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2907

Michael N. Schonbuch, State Bar No. 150884
Yaron M. Tilles, State Bar No. 208556

Attorneys for Defendant/Cross-Complainant CONSUELO
BACA dba EL CASTILLO NITE CLUB

FILED
'S ANGELES SUPERIOR COU

FEB 1 3 2001

JOHN A. CLARKE, CLERK

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JOSE ANTONIO LOPEZ, | CASE NO. BC 228122 |
| Plaintiff, | [Complaint filed 4/12/00] |
| vs. | |
| EL CASTILLO NIGHT CLUB, DOES 1 to 20, Inclusive, | EL CASTILLO'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF IN OPPOSITION OF MOTION FOR SUMMARY JUDGMENT |
| Defendants. | |
| CONSUELO BACA dba EL CASTILLO NITE CLUB, | Trial Date: March 19, 2001 |
| Cross-Complainant, | Hearing Date: February 16, 2001 Hearing Time: 8:30 a.m. Dept.: 40 |
| vs. | |
| JOHN ROE and ROES 2 through 25, Inclusive, | |
| Cross-Defendants. | |

COMES NOW Defendant/Cross-Complainant CONSUELO BACA dba EL CASTILLO NITE CLUB ("EL CASTILLO") and hereby submits the following objections to evidence submitted with PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES

///

000169

IN OPPOSITION OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

("Opposition"):

| Evidence | Objections |
|---|---|
| 1. Printout of Arrests and Crimes (Opposition, Exhibit 3.) | Lack of foundation, *Evidence Code* § 403; Irrelevant, *Evidence Code* § 350; Over-broad; Fails to distinguish between phone inside EL CASTILLO and the public pay phone outside with the same 3054 W. Pico Blvd. address; Fails to establish prior similar incidents; and Fails to lay foundation between different codes, abbreviations and references. |
| 2. Unknown/Unidentifiable Photocopy of license history for 3054 W. Pico Blvd. (Opposition, Exhibit 4.) | Irrelevant, *Evidence Code* § 350; Vague, Fails to lay foundation between different references and codes. |
| 3. Department of Alcohol Beverage Control: Order Granting Offer In Compromise, dated June 5, 1995 (Opposition, Exhibit 4.) | Irrelevant, *Evidence Code* § 350; Lack of authentication, *Evidence Code* §§ 1400-1401; and Lack of foundation, *Evidence Code* § 403. |
| 4. Department of Alcohol Beverage Control: Decision, dated March 6, 1995. (Opposition, Exhibit 4.) | Irrelevant, *Evidence Code* § 350; Lack of authentication, *Evidence Code* §§ 1400-1401; and Lack of foundation, *Evidence Code* § 403. |
| 5. Department of Alcohol Beverage Control: Accusation Under Alcoholic Beverage Control Act and State Constitution, dated December 16, 1994. (Opposition, Exhibit 4.) | Irrelevant, *Evidence Code* § 350; Lack of authentication, *Evidence Code* §§ 1400-1401; and Lack of foundation, *Evidence Code* § 403. |

000170

| Evidence | Objections |
| --- | --- |
| 6. Department of Alcohol Beverage Control: Report of Investigation, dated November 21, 1994. (Opposition, Exhibit 4.) | Irrelevant, *Evidence Code* § 350; Lack of authentication, *Evidence Code* §§ 1400-1401; Lack of foundation, *Evidence Code* § 403.; and Hearsay not falling within any of the exceptions under *Evidence Code* § 1200. |
| 7. Notice To Appears for DeSosa, Chavez and Ayala and five (5) accompanying pages entitled Continuation Sheet. (Opposition, Exhibit 4.) | Irrelevant, *Evidence Code* § 350; Hearsay not falling within any of the hearsay exceptions under *Evidence Code* § 1200; and Lack of foundation, *Evidence Code* § 403. |
| 8. Report On Application for License, dated July 18, 1985. (Opposition, Exhibit 4.) | Irrelevant, *Evidence Code* § 350; Lack of authentication, *Evidence Code* §§ 1400-1401; and Lack of foundation, *Evidence Code* § 403. |
| 9. Unknown/Unidentified Application of LINEBERGER, Maxwell and WALLACE, Sam Lee, dated March 2, 1971. (Opposition, Exhibit 4.) | Irrelevant, *Evidence Code* § 350; Lack of authentication, *Evidence Code* §§ 1400-1401; and Lack of foundation, *Evidence Code* § 403. |
| 10. Unknown/Unidentified Report of SAM LEE WALLACE, date illegible. (Opposition, Exhibit 4.) | Irrelevant, *Evidence Code* § 350; Lack of authentication, *Evidence Code* §§ 1400-1401; and Lack of foundation, *Evidence Code* § 403. |
| 11. Notice To Appear for Baca regarding entertainment permit, dated September 26, 1987. (Opposition, Exhibit 4.) | Irrelevant, *Evidence Code* § 350; Lack of authentication, *Evidence Code* §§ 1400-1401; Lack of foundation, *Evidence Code* § 403; and Hearsay not falling within any of the hearsay exceptions under *Evidence Code* § 1200. |

| Evidence | Objections |
|---|---|
| 12. Notice To Appear for Avila regarding loud music from car, dated January 29, 1993. (Opposition, Exhibit 4.) | Irrelevant, *Evidence Code* § 350; Lack of authentication, *Evidence Code* §§ 1400-1401; Lack of foundation, *Evidence Code* § 403; and Hearsay not falling within any of the hearsay exceptions under *Evidence Code* § 1200. |
| 13. Letter from Acting District Administrator Dan Toomey to Baca dated February 25, 1993. (Opposition, Exhibit 4.) | Irrelevant, *Evidence Code* § 350; Lack of authentication, *Evidence Code* §§ 1400-1401; Lack of foundation, *Evidence Code* § 403; and Hearsay not falling within any of the hearsay exceptions under *Evidence Code* § 1200. |
| 14. Department of Alcohol Beverage Control: Order Granting Offer In Compromise, dated March 7, 1991. (Opposition, Exhibit 4.) | Irrelevant, *Evidence Code* § 350; Lack of authentication, *Evidence Code* §§ 1400-1401; and Lack of foundation, *Evidence Code* § 403. |
| 15. Department of Alcohol Beverage Control: Decision, dated December 31, 1990. (Opposition, Exhibit 4.) | Irrelevant, *Evidence Code* § 350; Lack of authentication, *Evidence Code* §§ 1400-1401; and Lack of foundation, *Evidence Code* § 403. |
| 16. Department of Alcohol Beverage Control: Accusation Under Alcoholic Beverage Control Act and State Constitution, dated December 5, 1990. (Opposition, Exhibit 4.) | Irrelevant, *Evidence Code* § 350; Lack of authentication, *Evidence Code* §§ 1400-1401; and Lack of foundation, *Evidence Code* § 403. |

000172

| Evidence | Objections |
|---|---|
| 17. Notice to Appear for Juana Castillo, dated November 16, 1990. (Opposition, Exhibit 4.) | Irrelevant, *Evidence Code* § 350; Lack of authentication, *Evidence Code* §§ 1400-1401; and Lack of foundation, *Evidence Code* § 403. |
| 18. Department of Alcohol Beverage Control: Report of Investigation, dated November 16, 1990. (5 pages) (Opposition, Exhibit 4.) | Irrelevant, *Evidence Code* § 350; Hearsay not falling within any of the hearsay exceptions under *Evidence Code* § 1200; and Lack of foundation, *Evidence Code* § 403. |
| 19. L.A.P.D. Preliminary Investigation of Attempted Murder. (Opposition, Exhibit 5.) | Irrelevant, *Evidence Code* § 350; Hearsay not falling within any of the hearsay exceptions under *Evidence Code* § 1200; and Lack of foundation, *Evidence Code* § 403. |

DATED: February 13, 2001 DANIELS, FINE, ISRAEL & SCHONBUCH, LLP

By:_____
 Michael N. Schonbuch
 Attorneys for Defendant/Cross-Complainant
 CONSUELO BACA dba EL CASTILLO NITE
 CLUB

000173

APPENDIX B

LOS ANGELES, CALIFORNIA, FRIDAY, FEBRUARY 16, 2001

9:41 A.M.

DEPARTMENT NO. 40 HON. DAVID A. WORKMAN, JUDGE

-oOo-

THE COURT: THIS IS THE HEARING OF THE MOTION OF THE DEFENDANT'S SUMMARY OBJECTION IN LOPEZ V. EL CASTILLO NITE CLUB.

WILL COUNSEL STATE THEIR APPEARANCES, PLEASE.

MR. LANE: YES, YOUR HONOR. BARRY LANE, ON BEHALF OF THE PLAINTIFF, RESPONDING PARTY.

MR. SCHONBUCH: MICHAEL SCHONBUCH, FOR DEFENDANT, MOVING PARTY.

THE COURT: I HAVE PREPARED A TENTATIVE RULING WHICH GRANTS THE MOTION. I SUSTAINED THE DEFENDANT'S EVIDENTIARY OBJECTION TO EVIDENCE PROFFERED IN OPPOSITION TO THE MOTION. I THINK THE TENTATIVE RULING SPEAKS FOR ITSELF. THERE ARE CRITICAL ISSUES OF FORESEEABILITY AND CAUSATION, WHICH ON THIS EVIDENCE MUST BE RESOLVED IN THE MOVING PARTY'S FAVOR FOR THE REASONS INDICATED IN THE MOTION.

MR. LANE: THANK YOU, YOUR HONOR -- I'M SORRY.

THE COURT: I WILL HEAR FURTHER ARGUMENT, IF YOU WISH, MR. LANE.

MR. LANE: YES, YOUR HONOR. YOUR DECISION GRANTS DEFENDANT'S MOTION TO EXCLUDE THE POLICE REPORT INFORMATION, THE RECORDS FROM L.A.P.D.?

THE COURT: I SUSTAINED ALL THE OBJECTIONS FOR THE

REASONS INDICATED.

MR. LANE: AND I JUST WISH TO RESPOND TO THEM.

THE COURT: OKAY.

MR. LANE: ONE OF THE OBJECTIONS, YOUR HONOR, WAS THAT THE DOCUMENTS WERE NOT AUTHENTICATED, AND I DO BELIEVE THAT THE DOCUMENTS THAT WERE SUBMITTED DID INCLUDE THE ATTACHMENT OF A CERTIFICATION OF RECORDS IN BOTH CASES, BOTH FROM THE L.A.P.D., AS WELL AS FROM THE ALCOHOL AND BEVERAGE CONTROL BOARD. I MEAN THEY CERTAINLY WERE CERTIFIED AS BEING THE RECORDS FROM THOSE FACILITIES. IT WOULD APPEAR THEN THAT THE DOCUMENTS THEMSELVES, YOUR HONOR, SATISFIED THE BUSINESS RECORDS RULE AS AN EXCEPTION TO THE HEARSAY RULE, AND, THEREFORE, DEFENDANT'S OBJECTION AS TO THE DOCUMENTS BEING HEARSAY I DON'T THINK IS WELL-FOUNDED.

THE COURT: YOU'RE REFERRING TO THE PRINTOUT OF ARRESTS AND CRIMES?

MR. LANE: YES, YOUR HONOR.

THE COURT: WELL, HE ALSO HAS A RELEVANCE OBJECTION.

MR. LANE: ALL RIGHT. I'LL BE HAPPY TO ADDRESS MYSELF TO THE RELEVANCE OBJECTION.

THE COURT: ALSO OVERBREATH OBJECTION, ALSO OBJECTS THAT THE EVIDENCE FAILS TO DISTINGUISH BETWEEN A PHONE INSIDE THE BAR AND PUBLIC PAY PHONES OUTSIDE.

MR. LANE: YES, YOUR HONOR.

THE COURT: WITH THE SAME ADDRESS.

MR. LANE: ALL RIGHT. HOWEVER.--

THE COURT: FAILS TO ESTABLISH PRIOR SIMILAR

INCIDENTS, WITH ACCENT ON THE WORD "SIMILAR," THOSE ARE ALL CRITICAL AND VERY SOUND OBJECTIONS WHICH THE COURT SUSTAINED.

MR. LANE: WELL, I'M GOING TO ADDRESS EACH OF THE OBJECTIONS, YOUR HONOR. FIRST OF ALL, THE DEFENDANT HAS NOT PRODUCED ANY EVIDENCE THAT THERE IS A TELEPHONE OUTSIDE OF THE NIGHT CLUB. HE HAS NOT PRODUCED A PHOTOGRAPH OF IT, HE HAS NOT PRODUCED A TELEPHONE NUMBER, HE HASN'T PRODUCED ANYTHING. I BELIEVE THAT THE DOCUMENTS -- I'M SORRY, YOU WERE ABOUT TO SAY SOMETHING?

THE COURT: NO. GO AHEAD.

MR. LANE: OKAY. I DON'T EVEN KNOW WHAT THE TELEPHONE NUMBER IS INSIDE THE NIGHT CLUB. ALL WE HAVE IS THAT THE NIGHT CLUB LOCATED AT 3054 IS EXACTLY WHAT IS PRINTED OUT ON THE L.A.P.D. RECORD, CRIMES AT 3054 WEST PICO BOULEVARD.

LET ME GO A LITTLE BIT FURTHER, YOUR HONOR, JUST TO ESTABLISH MY RECORD.

THE COURT: WHAT IS YOUR RESPONSE TO THAT POINT, COUNSEL?

MR. SCHONBUCH: WHICH POINT, YOUR HONOR?

THE COURT: THE LACK OF EVIDENCE OF THE PHONE OUTSIDE THE BAR ON THE STREET WITH THE SAME ADDRESS.

MR. SCHONBUCH: YOUR HONOR --

THE COURT: 3054 WEST PICO.

MR. SCHONBUCH: -- HE HAS A PHOTOGRAPH OF THE BAR WHICH SHOWS THE PAY PHONE RIGHT THERE. I JUST RAISE THE OBJECTION. IT'S HIS BURDEN --

MR. LANE: I'VE NEVER SEEN THE PHOTOGRAPH, YOUR HONOR. HOWEVER --

MR. SCHONBUCH: IT WAS PRODUCED. YOUR HONOR, IT DOESN'T, IN MY OPINION, I RAISE THE OBJECTION, AND AT THAT POINT I THINK HE'S GOT TO --

THE COURT: WHAT?

MR. SCHONBUCH: HE'S GOT TO SHOW US WHAT THESE RECORDS MEAN.

MR. LANE: YES, YOUR HONOR, MAY I GO A LITTLE BIT FURTHER JUST TO --

THE COURT: THAT'S THE RELEVANCE OBJECTION, ACTUALLY.

MR. LANE: LET ME GO FURTHER. THE INCIDENT THAT IS LISTED AS AN A.D.W., ASSAULT WITH A DEADLY WEAPON, IS THE SHOOTING OF MR. LOPEZ. THE RECORDS ALSO SHOW THREE PRIOR A.D.W.'S AT THE SAME ADDRESS, IT SHOWS FOUR ROBBERIES AT THE SAME ADDRESS, A DISCHARGE OF A GUN AT THE SAME ADDRESS, A BATTERY AT THE SAME ADDRESS, ALL WITHIN A FIVE-YEAR PERIOD. NOW, YOUR HONOR, I WILL SAY THIS; IF YOUR HONOR WANTED TO SEE THE NARRATIVE REPORTS ON EACH A.D.W. TO ESTABLISH THAT THEY WERE THE RESULT OF A GUN, I WILL SUBMIT TO THE COURT THAT ON JANUARY THE 2ND WE SUBPOENAED THOSE BACKUP DOCUMENTS. THEY WERE DUE TO BE DELIVERED TO ME ON FEBRUARY THE 12TH. I'VE BEEN ON THE PHONE EVERYDAY WITH THE DISCOVERY UNIT AT PARKER CENTER, AND I WAS ONLY TOLD THAT THEY RECEIVED A RASH OF CRIMINAL REQUESTS FOR DISCOVERY, AND THAT THEY WOULDN'T HAVE MINE FOR ANOTHER TWO WEEKS.

WE HAVE BEEN TRYING TO GET THOSE BACKUP RECORDS, YOUR HONOR, UNDERSTANDING THAT AT THE TIME OF TRIAL, ON A RELEVANCY OBJECTION THAT WITHOUT THE BACKUP DOCUMENTS, THE OBJECTION MIGHT BE SUSTAINED. BUT, YOUR HONOR, I SUBMIT, THAT SUBMITTING THIS RECORD AUTHENTICATED BY THE POLICE AS BEING A TRUE AND ACCURATE RECORD, WE'VE AT LEAST CREATED A PRESUMPTION THAT THERE WAS CRIMINAL ACTIVITY AT THIS LOCATION.

THE COURT: BUT IT IS MOSTLY DRUG RELATED THOUGH. LOOK AT IT.

MR. LANE: WELL, YOUR HONOR, THAT RAISES -- I DON'T SEE WHERE IT SAYS DRUG RELATED.

THE COURT: LOOK AT THE CRIMES, THE CHARGES.

MR. LANE: A.D.W., DOMESTIC VIOLENCE, ROBBERY.

THE COURT: I WAS LOOKING AT PAGE 1.

MR. LANE: ALL RIGHT. YOU'RE LOOKING AT A DOCUMENT THAT I DELIVERED TO THE -- THAT I RECEIVED FROM THEM YESTERDAY HAND DELIVERED WHEN I PICKED THEM UP. THERE ARE 236 INCIDENTS. THAT, YOUR HONOR, WAS FAXED TO COUNSEL YESTERDAY, BECAUSE WE ONLY PICKED IT UP AT 12:01 YESTERDAY AFTERNOON AND FAXED IT TO THE COURT. WHAT WE WERE TRYING TO SHOW WAS THE ACTIVITY AT THAT PARTICULAR SITE. THE DOCUMENT THAT I'M REFERRING TO NOW, YOUR HONOR, WAS THE DOCUMENT ATTACHED TO OUR ORIGINAL RESPONSE SHOWING 16 CRIMES, LISTING A.D.W.'S FOUR OF THEM, FOUR ROBBERIES, A MISDEMEANOR BATTERY, DISCHARGE OF A GUN. OUR ONLY POINT, YOUR HONOR, IS THAT WHILE WE DON'T HAVE THE BACKUP TO SHOW WHETHER IT WAS A GUN OR A KNIFE INVOLVED IN THE A.D.W.,

WE'VE PRODUCED ENOUGH, AT LEAST WE BELIEVE, TO SATISFY THE COURT ON A MOTION FOR SUMMARY JUDGMENT. WE'VE AT LEAST CREATED A PRESUMPTION OF PRIMA FACIE, YOUR HONOR, OR IF THAT IS WHAT THE COURT IS WAITING FOR, IF THE COURT WOULD GIVE ME TWO MORE WEEKS, I WILL HAVE THE NARRATIVES ON EACH ONE OF THESE EVENTS. WE'VE BEEN WAITING FOR THEM FOR MONTHS, YOUR HONOR. THERE'S BACKUP IN PARKER CENTER. I WAS THERE YESTERDAY BEGGING FOR THEM. THEY SAID, WE'VE GOT 20 CRIMINAL REQUESTS FOR DOCUMENTS IN FRONT OF YOU; GIVE US TWO MORE WEEKS.

THE COURT: COUNSEL?

MR. SCHONBUCH: YOUR HONOR, THIS CASE IS SET FOR TRIAL IN LESS THAN 30 DAYS. THE CASE WAS FILED IN NOVEMBER. ANYTHING HE NEEDED SHOULD HAVE BEEN OBTAINED AT THAT TIME. I'M FORCED TO PREPARE AND GET A MOTION FOR SUMMARY JUDGMENT IN COMPLIANCE WITH CODE OF CIVIL PROCEDURE AND GET THIS CASE READY IN A TIMELY FASHION, AND I'VE DONE SO. I'VE MET ALL THE BURDENS; I'VE RAISED ALL THE ISSUES.

THE COURT: THE CASE WAS FILED ACTUALLY IN APRIL, APRIL OF LAST YEAR, NOT NOVEMBER.

MR. SCHONBUCH: OH, I'M SORRY.

THE COURT: APRIL 12.

MR. SCHONBUCH: THE BOTTOM LINE IS HE'S HAD ALL OF HIS DUE TIME. I FEEL BAD THAT HE WAS THERE YESTERDAY, AND BUT THIS IS SOMETHING THAT SHOULD HAVE BEEN DONE A LONG TIME AGO. THAT'S WHAT THE M.S.J. RULES ARE ABOUT. THERE IS NOT EVEN A DECLARATION -- EVEN IF YOU GET PAST ALL

APPENDIX C

ORIGINAL FILED

MAR 2 8 2001

LOS ANGELES
SUPERIOR COURT

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JOSE ANTONIO LOPEZ, | CASE NO. BC 228122 |
| Plaintiff, | [Complaint filed 4/12/00] |
| vs. | |
| EL CASTILLO NIGHT CLUB, DOES 1 to 20, Inclusive, | [~~PROPOSED~~] JUDGMENT |
| Defendants. | |
| CONSUELO BACA dba EL CASTILLO NITE CLUB, | |
| Cross-Complainant, | |
| vs. | |
| JOHN ROE and ROES 2 through 25, Inclusive, | |
| Cross-Defendants. | |

The Motion of defendant/cross-complainant Consuelo Baca dba El Castillo Nite Club for Summary Judgment came on regularly for hearing at 8:30 a.m. on February 16, 2001 in Department 40 of the above-entitled court, Honorable David A. Workman, Judge Presiding.

After full consideration of the evidence, points and authorities in support of and opposition to said motion as well as the reply brief and evidentiary objections and oral arguments

000273

of counsel, this court finds that defendant/cross-complainant Consuelo Baca dba El Castillo Nite Club has shown by admissible evidence and all reasonable inferences drawn therefrom that there are no triable issues of any material fact with respect to the complaint filed herein; therefore, moving party is entitled to judgment in its favor as a matter of law.

GOOD CAUSE HAVING BEEN SHOWN THEREFOR, IT IS ORDERED that defendant/cross-complainant's Motion for Summary Judgment is hereby granted as follows:

1. The court sustains all of defendant's evidentiary objections filed on February 13, 2001.

2. The reading of all of plaintiff's evidence reveals that the evidence surviving rulings on evidentiary objections is immaterial as to those issues of foreseeability and causation.

3. Judgment shall be entered in favor of defendant/cross-complainant Consuelo Baca dba El Castillo Nite Club, Los Angeles Superior Court case No. BC 228122.

4. Defendant/Cross-Complainant Consuelo Baca dba El Castillo Nite Club is entitled to costs as provided by law in the amount of $_____.

DATED: __MAR 2 8 2001__

DAVID A. WORKMAN
JUDGE, LOS ANGELES SUPERIOR COURT

000274

2